STATE OF NORTH CAROLINA v. MAUDE MAY CLAY

No. 40

(Filed 12 July 1979)

1. **Criminal law § 75.7 — statement made in defendant's home — no custodial interrogation**

Evidence was sufficient to support the trial court's conclusion that defendant's inculpatory statement made to officers was voluntary and did not stem from a custodial interrogation where such evidence tended to show that officers arrived at defendant's house at 1:00 a.m., gave defendant the *Miranda* warnings, and in response to their questions were told by defendant that another person had shot the victim; two officers then accompanied the victim to the hospital while other policemen remained at defendant's house; the two officers who had gone to the hospital returned to defendant's house at 3:10 and again asked her who shot the victim; defendant stated at this time that she had shot him; defendant was not placed under arrest until after she made the statement at 3:10 a.m.; defendant was not told not to leave her residence while officers went to the hospital; and defendant was never threatened or coerced into giving a statement or promised anything.

**2. Assault and Battery § 8— self-defense — when deadly force is excessive**

    Where an assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law.

**3. Assault and Battery § 15.6— self-defense — force permissible — improper instruction**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court's instructions with respect to excessive force and absence of an intent to kill that defendant could use such force as she thought necessary to protect herself from bodily injury or offensive physical contact were improper, but such error does not require a new trial because the instruction was more favorable than that to which defendant was entitled.

APPEAL by the State from the decision of the Court of Appeals, reported in 39 N.C. App. 150, 249 S.E. 2d 843 (1978), granting defendant a new trial based on *Judge John C. Martin's* denial of defendant's motion to suppress confession evidence at the 13 February 1978 Criminal Session of ALAMANCE Superior Court.

Defendant was charged in a bill of indictment, proper in form, with assault with a deadly weapon with intent to kill inflicting serious bodily injury.

The State presented evidence which tended to show that on the afternoon or early evening of 3 September 1977, Nathaniel Evans went to defendant's house to buy a drink of liquor and while there became engaged in a scuffle with defendant because of her refusal to sell him a bowl of cooked okra. Evans went home but returned to defendant's house around 11:00 p.m. and was invited into the house by Verla Turner. Evans testified that after he entered the house, Turner pulled a knife on him, and he started backing towards the door. Defendant then told Turner to get the shotgun so she could shoot Evans. When Turner returned with the gun, Evans turned and started out the door and was shot in the leg. He fell to the floor, and when he looked up, defendant was trying to take the gun from Turner to shoot him again. Evans further testified that he did not see who shot him.

Burlington police officers Barrow and Perry testified that they went to defendant's residence at approximately 1:05 a.m. in response to a call reporting a domestic problem. The officers did not realize until they arrived at the residence that there had been

a shooting. At that time, they gave defendant the *Miranda* warnings and in response to their questions were told by defendant that Turner had shot Evans. The two officers then accompanied Evans to the hospital while other policemen remained at defendant's house. Barrow and Perry returned to defendant's residence at about 3:10 a.m. and once again asked her who shot Evans. At this time, she stated that she had shot him. At trial, defendant moved to suppress this statement. The trial judge conducted a voir dire hearing as a result of which he concluded that defendant's statement was "the result of an on-the-scene investigation rather than custodial interrogation" and denied the motion to suppress.

Defendant presented evidence which tended to show that Evans had threatened to kill her and had pulled a knife on Turner earlier that evening. There was also evidence that Evans was drunk at the time of the shooting and that he had a reputation for being a violent and fighting man.

The trial judge submitted to the jury the possible verdicts of assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, and not guilty. The jury found defendant guilty of assault with a deadly weapon inflicting serious injury. From judgment imposing a sentence of four to five years, defendant appealed.

The Court of Appeals, in an opinion written by Judge Hedrick, Judge Morris concurring, granted defendant a new trial on the grounds that defendant's inculpatory statement was the result of custodial interrogation and should not have been admitted into evidence. Judge Harry Martin dissented on the grounds that the evidence presented on voir dire supported the trial judge's conclusion that defendant's inculpatory statement was voluntary and did not stem from a custodial interrogation. The State appealed.

*Angela R. Bryant for defendant appellee.*

*Rufus L. Edmisten, Attorney General, by James Wallace, Jr., Assistant Attorney General, for the State.*

BRANCH, Justice.

The State contends that the Court of Appeals incorrectly decided that the trial judge erred in admitting defendant's inculpatory statement into evidence.

Pursuant to defendant's motion to suppress this statement, the trial judge correctly conducted a voir dire hearing. After hearing testimony from Officer Barrow and defendant, the trial judge, *inter alia,* made the following findings of fact:

> That again at approximately 3:10 a.m. Officer Barrow and Officer Perry returned to the Clay residence, having been to the Alamance County Hospital to determine the status of the victim, and upon returning to the Clay residence had in their possession a tape recorder; that during the period of time in which they were absent from the Clay residence the defendant was not in custody or detained in any manner and felt that she could have left the house at any time; that the officers thereafter asked the defendant questions and interrogated the defendant and that she voluntarily answered the questions; that such interrogation was conducted in connection with an on-the-scene investigation of a crime and not as a result of any custodial interrogation and that at the time of the second interrogation and answers given by the defendant, the defendant had not been placed under arrest and had not been told that she could not leave the residence and was in no manner detained even though officers had remained present there at the residence during the entire period of absence of Officers Perry and Barrow and that prior to asking Mrs. Clay any questions at the time of the second interrogation Mrs. Clay was reminded of the rights which she had previously been given at approximately 1:10 a.m.

Based on these findings of fact, Judge Martin concluded that the inculpatory statement was the result of an on-the-scene investigation and was given "voluntarily, freely, and understandingly without duress, coercion, or inducement."

In deciding that the trial judge erred in allowing defendant's statement into evidence, the Court of Appeals stated:

In our opinion, in the present case the evidence adduced on *voir dire* and the findings of fact made by the trial judge do not support the conclusion that the defendant's inculpatory statements "were the result of an on-the-scene investigation rather than a custodial interrogation." In our opinion, the evidence in the present case demonstrates a "coercive environment" rendering the 3:10 a.m. statements of the defendant inadmissible in the absence of any evidence showing that she affirmatively waiver her right to counsel.

The *Miranda* warnings and waiver of counsel are required only when an individual is being subjected to custodial interrogation. *State v. Sykes,* 285 N.C. 202, 203 S.E. 2d 849 (1974); *State v. Blackmon,* 284 N.C. 1, 199 S.E. 2d 431 (1973). "Custodial interrogation" means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). Neither *Miranda* warnings nor waiver of counsel is required when police activity is limited to a general on-the-scene investigation. *State v. Sykes, supra; State v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638 (1968). The ultimate test of the admissiblity of a confession is whether the statement was in fact voluntarily and understandingly made. *State v. White,* 291 N.C. 118, 229 S.E. 2d 152 (1976); *State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975). It is well settled that the trial judge's findings of fact after a voir dire hearing concerning the admissibility of a confession are conclusive and binding on the appellate courts when supported by competent evidence. *State v. Jenkins,* 292 N.C. 179, 232 S.E. 2d 648 (1977); *State v. White, supra.* Likewise, the finding of the trial court that the defendant was not in custody at the time he made the statement in question is conclusive if supported by record evidence elicited on a properly conducted voir dire. *State v. Dollar,* 292 N.C. 344, 233 S.E. 2d 521 (1977).

[1] With these rules in mind, we turn to the record to ascertain whether the trial judge's findings, in instant case, are supported by evidence elicited on voir dire.

Officer Barrow testified that before he talked to defendant he did not have a suspect in mind. The first statement was taken at about 1:10 a.m., and defendant was not under arrest or in

custody. She told the officers that Mr. Turner had shot Mr. Evans. Officers Barrow and Perry then went to the hospital and returned to defendant's residence at approximately 3:00 a.m. Before the officers went to the hospital, defendant was not under arrest and was not told not to leave her residence. She was not handcuffed and was not placed under arrest when Barrow and Perry returned from the hospital. Defendant gave the officers a statement at 3:10 a.m. indicating that she had shot Mr. Evans. She was never threatened or coerced into giving a statement or promised anything.

Defendant's voir dire testimony included the following statements which we find quite telling:

> I feel I could have left the house before I made the statement if I had wanted to go, and I don't think they would have tried to stop me. . . .

> I was not arrested at my house that night and I was not handcuffed or threatened in order to get me to answer questions. I knew at the time that I did not have to tell the police anything and that I could have stopped talking to them at any time I wanted to. I knew if I wanted a lawyer that I could have one there while they were talking to me. I did leave the house after talking to the police.

> . . . I was upset, really mad, and was afraid because that big man had come in here jumping on me and beating on me. I was nervous. But not because all the policemen were in the house. Because then I felt safe. . . .

> . . . I was arrested on this charge about 7:00 o'clock that morning.

It is obvious that the trial judge's findings are amply supported by the testimony presented on voir dire. Moreover, it appears that the evidence which lends the strongest support to his findings was elicited from the defendant. The Court of Appeals, in support of its decision, relies on conclusions not warranted by the evidence. Judge Harry Martin, in his dissenting opinion, has ably pointed out the lack of basis for these conclusions.

There was plenary evidence to support the trial judge's findings of fact, which in turn support his conclusions of law and rul-

ing. We, therefore, hold that the trial judge correctly denied defendant's motion to suppress her inculpatory statements.

Defendant argues that the trial judge erred in instructing the jury in that he failed to distinguish between the elements of self-defense when there is an intent to kill and the elements of self-defense where that intent is absent. Defendant's contention seems to be that if she did not act with intent to kill, her assault would be excused by the law of self-defense if it reasonably appeared to be necessary to protect herself from bodily injury or offensive physical contact. However, we think the inquiry relative to self-defense in such cases should focus not on the presence or absence of defendant's intent to kill but on the amount of force used by the defendant in repelling the attack and the nature of the attack with which the defendant was faced.

It is clear that where one has inflicted serious injury upon another with intent to kill, such assault would be justified as being in self-defense only if the defendant was in actual or apparent danger of death or great bodily harm at the hands of the other. *State v. Anderson*, 230 N.C. 54, 51 S.E. 2d 895 (1949). Our cases also provide that a defendant can use force in self-defense even though the threat he attempts to repel is less than death or great bodily harm. *State v. Fletcher*, 268 N.C. 140, 150 S.E. 2d 54 (1966); *State v. Anderson, supra.* However, some confusion arises with regard to the amount of force which may be used in self-defense to protect against bodily injury or offensive physical contact.

In *State v. Anderson, supra,* the defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injuries. Defendant offered evidence tending to show self-defense, and the trial judge submitted to the jury the possible verdicts of guilty of felonious assault, the lesser included offense of nonfelonious assault with a deadly weapon, and not guilty. In its charge to the jury, the court, without qualification, instructed:

> One is permitted to fight in self-defense or kill in self-defense when it is necessary for him to do so in order to avoid death or great bodily harm.

Finding this instruction to be erroneous, this Court, speaking through Justice Ervin, stated:

. . . In final result, it charged the jury that one is never privileged by law to employ force in self-protection unless he is threatened with death or great bodily harm.

* * *

The law does not compel any man to submit in meekness to indignities or violence to his person merely because such indignities or violence stop short of threatening him with death or great bodily harm. If one is without fault in provoking, or engaging in, or continuing a difficulty with another, he is privileged by the law of self-defense to use such force against the other as is actually or reasonably necessary under the circumstances to protect himself from bodily injury or offensive physical contact at the hands of the other, even though he is not thereby put in actual or apparent danger of death or great bodily harm.

In *State v. Fletcher, supra,* defendant was also charged with assault with a deadly weapon with intent to kill inflicting serious injury. The trial judge instructed the jury that in order to have the benefit of the principle of self-defense, the defendant must show that he used a deadly weapon only to protect himself from death or great bodily harm. This Court held that the instruction was erroneous because it improperly placed on the defendant the burden of satisfying the jury that he acted in self-defense. Relying on *State v. Anderson, supra,* the Court found the instruction objectionable in another respect:

Moreover, the court's instructions imply defendant could not lawfully use force in self-defense unless he was threatened *with death or great bodily harm.* We find no instruction with reference to the right of defendant to defend himself against a nonfelonious assault. Failure to instruct the jury with reference to defendant's right of self-defense in respect of repelling a nonfelonious assault is prejudicial error.

[2] Even though the weapons used in those cases were not deadly weapons per se, both *Anderson* and *Fletcher* may leave the impression that a defendant may assault another with a deadly weapon if it reasonably appears that such assault is necessary to protect the defendant from bodily injury or offensive physical contact. Notwithstanding the language in *Anderson* and *Fletcher,*

we hold that a defendant may employ deadly force in self-defense *only* if it reasonably appears to be necessary to protect against death or great bodily harm. We define deadly force as force likely to cause death or great bodily harm. *See, Commonwealth v. Klein*, 363 N.E. 2d 1313 (Mass. 1977). This follows from our definition of deadly weapon, to wit, an instrument which is likely to produce death or great bodily harm, under the circumstances of its use. *State v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915 (1956); *State v. Perry*, 226 N.C. 530, 39 S.E. 2d 460 (1946). In so holding, we expressly reject defendant's contention, and any implication in our cases in support thereof, that a defendant would be justified by the principles of self-defense in employing deadly force to protect against bodily injury or offensive physical contact. Our decision says, in effect, that where the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law. Although we may hear protestations to the contrary, this decision will not compel anyone "to submit in meekness to indignities or violence to his person merely because such indignities or violence stop short of threatening him with death or great bodily harm." In such cases, a person so accosted may use such force, short of deadly force, as reasonably appears to him to be necessary under the circumstances to prevent bodily injury or offensive physical contact. This decision precludes the use of deadly force to prevent bodily injury or offensive physical contact and in so doing recognizes the premium we place on human life. However, it does not preclude the use of deadly force where such force reasonably appears to be necessary to prevent death or great bodily harm. The reasonableness of defendant's apprehension of death or great bodily harm must be determined by the jury on the basis of all the facts and circumstances as they appeared to defendant at the time. *State v. Ellerbe*, 223 N.C. 770, 28 S.E. 2d 519 (1944). Among the circumstances to be considered by the jury are the size, age and strength of defendant's assailant in relation to that of defendant; the fierceness or persistence of the assault upon defendant; whether the assailant had or appeared to have a weapon in his possession; and the reputation of the assailant for danger and violence.

**[3]**  In instant case, after instructing the jury on the elements of the offenses submitted, the trial judge instructed on self-defense, in part, as follows:

> Now, members of the jury, if the defendant acted in self defense, her actions are excused and she is not guilty. The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant did not act in self defense.

> Now if you find from the evidence beyond a reasonable doubt that the defendant assaulted Nate Evans with a deadly weapon with intent to kill inflicting serious injury or assaulted him with a deadly weapon inflicting serious injury or assaulted him with a deadly weapon, that offense, or assault, would be excused as being in self defense only if the circumstances at the time that she acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect herself from death or great bodily harm or to protect her home from attack and the circumstances did create such a belief in her mind.

*   *   *

> However, the force used cannot have been excessive. This means that the defendant has the right to use only such force as reasonably appeared to her to be necessary under the circumstances to protect herself from *bodily injury or offensive physical contact.* In making the determination, you should consider the circumstances as you find them to have existed from the evidence, including the size, age, and strength of the defendant as compared to that of Cleo Evans, the fierceness of the assault, if any, upon the defendant, whether or not Cleo Evans had a weapon in his possession, and the reputation, if any of Cleo Evans for danger and violence. [Emphasis added.]

*   *   *

> Now, if you find from the evidence beyond a reasonable doubt that the defendant did assault Nate Evans, but do not find that she had an intent to kill, that assault would be ex-

cused as being in self defense if the circumstances at the time she acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect herself from *bodily injury or offensive physical contact* or to protect her home from attack and the circumstances did create such a belief in her mind even though she was not thereby put in actual danger of death or great bodily harm. [Emphasis added.]

\*     \*     \*

If, members of the jury, however, although you are satisfied beyond a reasonable doubt that Maude May Clay committed an assault upon Cleo Nate Evans with a deadly weapon inflicting serious bodily injury with intent to kill or that she committed an assault upon him inflicting serious injury with a deadly weapon or that she committed an assault upon him with a deadly weapon, you may return a verdict of guilty only if the State has satisfied you beyond a reasonable doubt that Maude May Clay did not act in self defense — that is, that Maude May Clay did not reasonably believe that the assault was necessary to protect herself from death or serious bodily injury or her home from attack or that she, Maude May Clay, used excessive force or was the aggressor. If you do not so find or have a reasonable doubt, then Maude May Clay would be justified by self defense and it would be your duty to return a verdict of not guilty.

We note that in instructing on self-defense, the trial judge adhered, virtually verbatim, to the pattern jury instruction applicable to the case. However, we believe that in light of our holding in this case, that instruction is defective in part. The references to "bodily injury or offensive physical contact" in the two paragraphs dealing with excessive force and absence of an intent to kill are not warranted in instant case because defendant employed a deadly weapon or deadly force. Such error does not require a new trial, however, because the instruction was more favorable than that to which defendant was entitled.

In cases involving assault with a deadly weapon, trial judges should, in the charge, instruct that the assault would be excused as being in self-defense only if the circumstances at the time the

defendant acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from death or great bodily harm. If the weapon used is a deadly weapon per se, no reference should be made at any point in the charge to "bodily injury or offensive physical contact." If the weapon used is not a deadly weapon per se, the trial judge should instruct the jury that if they find that defendant assaulted the victim *but do not find that he used a deadly weapon*, that assault would be excused as being in self-defense if the circumstances at the time he acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from "bodily injury or offensive physical contact." In determining whether the weapon used was a deadly weapon, the jury should consider the nature of the weapon, the manner in which it was used, and the size and strength of the defendant as compared to the victim.

In summary, we hold that the trial judge correctly denied defendant's motion to suppress and that the instructions on self-defense were not prejudicial to defendant. The decision of the Court of Appeals granting defendant a new trial is

Reversed.

Chief Justice SHARP concurs in result.