STATE OF NORTH CAROLINA v. LONNIE JONES

No. 76

(Filed 8 January 1980)

1. **Homicide §§ 9.4, 28.4— defense of habitation—use of deadly force**

    A person has the right to use deadly force in the defense of his habitation in order to prevent a forcible entry, even if the intruder is not armed with a deadly weapon, where the attempted forcible entry is made under such circumstances that the person reasonably apprehends death or great bodily harm to himself or the occupants of the home at the hands of the assailant or believes that the assailant intends to commit a felony.

2. **Homicide § 28.4— failure to instruct on defense of home—error not cured by instruction on defense of family member**

    When there is competent evidence in a case to raise the issue of defense of home, the jury must be instructed on this defense, and error in the court's failure to so charge is not cured by an instruction on defense of a family member.

3. **Homicide §§ 28.4, 28.5— instructions on defense of home and defense of family member**

    The trial court in a homicide case was required to instruct the jury both on defense of home and defense of a family member where there was evidence tending to show that deceased stood in the street in front of defendant's home cursing and threatening the occupants thereof; defendant fired three warning shots in an attempt to scare deceased away; deceased ran onto the porch of the home, beat and kicked on the door, tore the lock off the screen door, and broke several panes of glass in the front door; some of the occupants of the home were hiding in closets because they were afraid of deceased; defendant's brother ran up on the porch and struck deceased three times with a shovel in an effort to stop him from trying to enter the home; and when deceased turned toward defendant's brother, defendant shot him three times.

4. **Homicide § 21.9— threatening harm to defendant's relatives—sudden passion—voluntary manslaughter**

    The trial court in a homicide case should have instructed the jury on involuntary manslaughter where the jury could have found that deceased provoked defendant by suddenly arousing defendant's passion by threatening injury to defendant's close relatives.

5. **Homicide § 28.3— instructions on excessive force**

    Defendant in a homicide case was not entitled to an instruction that an honest but unreasonable belief that it was necessary to kill deceased in defense of a family member should result in a verdict of guilty of voluntary manslaughter where the court correctly instructed the jury that the use of excessive force while acting without malice and in defense of a family member is voluntary manslaughter, since the court's instruction was but another way of stating that one who has an honest but unreasonable belief that it is necessary to kill is guilty of voluntary manslaughter.

ON appeal by defendant from the decision of the Court of Appeals, 41 N.C. App. 465, 255 S.E. 2d 232 (1979) (opinion by *Hedrick, J.* with *Morris, Chief Judge* concurring and *Webb, J.* dissenting), which found no error in defendant's trial before *Brewer, J.* at the 21 August 1978 Session of CUMBERLAND County Superior Court.

Defendant was charged in an indictment, proper in form, with second degree murder in the death of Lonnie Gregory, Jr.

The State's evidence tended to show that late in the evening on 22 October 1977, Van Porter, Ronnie Jones, Joe Thrash and Buddy Dunn were walking down Cude Street in Fayetteville, heading towards the Jones' house located on Center Street. As they passed Richard Hall's house on Cude Street, the deceased yelled derogatory comments at the four young men, threw a beer can at them, and chased them down Cude Street.

The four youths ran up to the Jones' house and ran inside. They informed the occupants of the house, Mrs. Alma Jones (defendant's mother), Carolyn Jones, Johnny Ray Jones, Billy Jean Locklear and the defendant, that there was someone outside trying to start trouble. At this time, the deceased was standing in the road in front of the house cursing and shouting. He had pulled off his jacket and his shirt and had thrown them on the ground, and he dared everyone in the house to come outside and fight him.

The defendant went to a room in the back of the house, got a loaded .22 automatic rifle, walked out the back door and around to the right front side of the house. Everyone else in the house went out on the front porch and Mrs. Jones told deceased to leave and go home because "we don't want no trouble." Deceased yelled a derogatory remark at Mrs. Jones and exchanged remarks with others on the porch. Defendant fired three warning shots. Deceased raised his hands and ran toward the house. All of the people on the porch ran inside and defendant ran around to the other side of the house. The deceased ran up on the porch and started beating and kicking the front door. He tore the lock off the screen door, tore the screen, and broke several panes of glass in the front door.

Ronnie Jones ran up on the porch with a shovel and struck the deceased once on the back of the head and twice on the back. As the deceased turned toward Ronnie Jones, defendant shot him twice in the back and once in the side. Deceased's brother and a friend carried him to the hospital where he died as a result of the three gunshot wounds.

The testimony from different state's witnesses conflicted on whether or not the deceased was armed with a knife. Weldon Whitehead testified for the State that the first shot was fired when everyone was in front of Richard Hall's house and then the chase to the Jones' house occurred. Whitehead also testified that he is the one that beat on the front door of the Jones' house and that he did this after deceased had been shot.

The defendant's evidence tended to show that as the deceased chased the four youths down Cude Street he was threatening to kill them. Deceased also threatened to kill some of the people on the front porch of the Jones' house as he yelled at them from the street. After defendant fired the warning shots, deceased told a friend of his who was nearby "to go get the gun." Defendant testified that before he fired the warning shots, the deceased "had taken about three or four half steps" toward the Jones' house. Defendant said that he fired those shots to "scare him off and keep him from coming up to the house."

When the deceased rushed up on the porch and started beating on the door and breaking out the glass, all of the people on the porch ran inside "like an airplane" and some hid in closets because they were frightened. At that point, defendant thought he saw a knife in deceased's possession. Ronnie Jones ran up on the porch and hit the deceased three times with a shovel. When the deceased turned toward Ronnie Jones defendant shot the deceased three times. He also thought he saw deceased with a knife as he turned toward Ronnie Jones.

Defendant testified that he shot the deceased "because he turned on my brother" and that, "I shot him because he said he was going to hurt somebody and he had turned towards my brother at that time." Defendant further testified that he "wasn't just determined to shoot somebody." He said he thought the deceased "was trying to get in on my mom and my sisters and my brothers, to hurt them or somebody" and that he "didn't know

who he [the deceased] was going to kill either, if he got ahold of them."

The trial judge charged the jury on second degree murder, defense of a family member, voluntary manslaughter by reason of the use of excessive force during the exercise of the right of defense of a family member and voluntary manslaughter by reason of the defendant being the aggressor in bringing on the affray.

After some deliberation, the jury returned to the courtroom and asked to be instructed again on the definition of second degree murder, malice and voluntary manslaughter. After further deliberations, the jury returned with a verdict of second degree murder.

Defendant was sixteen years of age at the time he shot and killed the deceased. He was sentenced to a term of imprisonment of fifty years as a regular youth offender. The trial judge recommended a minimum term of imprisonment of not less than ten years. The trial judge also found as a fact that the defendant would not benefit from treatment and supervision as a committed youthful offender.

The Court of Appeals found no error in defendant's trial with Webb, J. dissenting. Defendant appealed to this Court pursuant to G.S. 7A-30(2).

Other facts relevant to the decision will be related in the opinion.

*Assistant Public Defenders James R. Parish and Tye Hunter for the defendant.*

*Attorney General Rufus L. Edmisten by Associate Attorney Fred R. Gamin for the State.*

COPELAND, Justice.

By his third assignment of error, defendant contends that the trial judge erred in refusing to charge the jury on his right to defend his home from an attempted forceful entry by the deceased. By his fifth assignment of error, defendant contends that the trial judge erred in refusing to instruct the jury on voluntary

manslaughter by reason of a killing committed in the heat of passion. We agree with defendant on both of these arguments; therefore, he must be awarded a new trial.

[1] A person has the right to use deadly force in the defense of his habitation in order to prevent a forcible entry, even if the intruder is not armed with a deadly weapon, where the attempted forcible entry is made under such circumstances that the person reasonably apprehends death or great bodily harm to himself or the occupants of the home at the hands of the assailant or believes that the assailant intends to commit a felony. *State v. McCombs*, 297 N.C. 151, 253 S.E. 2d 906 (1979); *State v. Baker*, 222 N.C. 428, 23 S.E. 2d 340 (1942); *State v. Gray*, 162 N.C. 608, 77 S.E. 833 (1913). The occupant may use deadly force when it is actually or apparently necessary to do so, and the jury is the judge of the reasonableness of the defendant's apprehension. *State v. Miller*, 267 N.C. 409, 148 S.E. 2d 279 (1966).

The defendant has the burden of going forward to produce evidence that he acted in defense of home, or rely on such evidence as may be present in the State's case to raise this defense. At all times, the burden of proof is on the State to prove that the defendant acted unlawfully and with malice which includes proving beyond a reasonable doubt that the defendant did not act in lawful defense of home when defendant has met his burden of going forward to produce evidence that he did. *See, State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233 (1977).

[2] Thus, when there is competent evidence in the case to raise the issue of defense of home, the jury must be instructed on this defense and the fact that the jury was instructed on defense of a family member does not cure the error. *See, State v. Miller, supra; see, State v. Spruill*, 225 N.C. 356, 34 S.E. 2d 142 (1945). The trial judge must declare and explain the law arising on the evidence. G.S. 15A-1232.

Here, defendant requested that the trial judge instruct on defense of home; however, since this defense is a substantial and essential feature of the case, the trial judge must instruct on this defense when it is raised by the evidence even in the absence of any request by the defendant for special instructions. *State v. Miller, supra; State v. Spruill, supra.*

[3]   The Court of Appeals held that defendant was entitled to an instruction on defense of a family member but not defense of home because the deceased had stopped beating on the front door of the house and had turned toward defendant's brother when deceased was shot. The defendant testified, "I fired the shots because he turned on my brother . . . I shot him because he said he was going to hurt somebody and he had turned towards my brother at that time." We agree that this evidence raises the issue of defense of a family member and it was correct for the trial judge to instruct the jury on this defense. However, we disagree with the Court of Appeals' conclusion that this evidence makes the evidence of defense of home insufficient. We agree with the dissenting opinion by Webb, J. that there is competent evidence in the record raising the issue of defense of home so that it should also have been included in the jury charge.

The deceased took off his jacket and shirt and stood in the street yelling at and threatening the occupants of the house. After the defendant fired three warning shots, the deceased ran toward the house and up on the front porch. Before turning toward defendant's brother, deceased had been beating on the front door; he had torn the lock off the screen door; he had torn the screen; and he had broken several panes of glass from the front door. Many of the occupants of the house were hiding in closets because they were afraid of the deceased. He had turned momentarily toward defendant's brother because the brother had struck the deceased three times with a shovel *in an effort to stop him from trying to enter the house.* Defendant testified that he thought the deceased "was trying to get in on my mom and my sisters and my brothers, to hurt them or somebody" and that he "didn't know what he [the deceased] was going to do, didn't know who he was going to kill either, if he got ahold of them."

There is abundant evidence in the record raising the issue of defense of home. There is also evidence to raise the issue of defense of a family member. The evidence to support the latter does not render the evidence of the former insufficient. The jury must be instructed on both defenses because both are supported by competent evidence. *State v. McCombs, supra; State v. Spruill, supra.*

Second degree murder is the unlawful killing of a human being with malice and without premeditation and deliberation. *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979); *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963).

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976).

When there is evidence of all the elements of heat of passion on sudden provocation (which negates malice) then in order to prove the existence of malice the State must prove the absence of heat of passion beyond a reasonable doubt. *State v. Hankerson, supra.*

Killing in the heat of passion on sudden provocation means killing,

"without premeditation but under the influence of sudden 'passion,' this term means any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection." *State v. Jennings*, 276 N.C. 157, 161, 171 S.E. 2d 447, 449-50 (1970), *quoting* Black's Law Dictionary (4th ed. 1951), p. 1281.

If upon considering all the evidence, including the inferences and the evidence of heat of passion, the jury is left with a reasonable doubt as to the existence of malice it must find the defendant not guilty of murder in the second degree and should then consider whether he is guilty of voluntary manslaughter. *State v. Hankerson, supra.*

Voluntary manslaughter is a lesser included offense of murder. The jury should be instructed on a lesser included offense when there is evidence from which the jury could find that such lesser included offense was committed. *State v. Poole, supra; State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). Error in failing to submit the question of defendant's guilt of a lesser degree of the same crime is not cured by a verdict of guilty of the offense charged because it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly submitted to the jury. *State v. Poole, supra; State v. Duboise, supra.*

[4] Here, it is reasonable to infer from the evidence that the deceased provoked the defendant by suddenly arousing defendant's passion by threatening injury to defendant's close relatives. *State v. Edmundson*, 209 N.C. 716, 184 S.E. 504 (1936) (sudden passion aroused by assault on defendant's brother); LaFave & Scott, *Criminal Law* § 76, p. 577 (1972) and cases cited therein.

The deceased had been beating on the front door of the house and had damaged the screen door and broken the glass panes. The house was occupied by close relatives of the defendant. Defendant testified,

> "When I shot Lonnie Gregory, Jr., I was frightened, scared. I shot him because he said he was going to hurt somebody and he had turned towards my brother at that time.
>
> . . . When he was on the porch beating on the door I saw what I thought was a pocket knife in his right hand. He was beating on the door with his right hand but the blade was sticking out — the blade was not hitting the door. After Ronnie hit him with the shovel he turned and I thought I saw the knife again. I thought Lonnie Jr. Gregory was trying to get in on my mom and my sisters and my brothers, to hurt them or somebody.
>
> .   .   .
>
> .   .   .
>
> . . . Approximately when he rushed up on the porch, he was going to do something. I don't know, nobody else knowed. I didn't know what he was going to do, didn't know who he was going to kill either, if he got ahold of them."

The above evidence would support a conviction of voluntary manslaughter; therefore, it was prejudicial error for the trial judge to refuse to instruct on this offense. *State v. Edmundson, supra; cf., State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971) (no evidence of voluntary manslaughter); 6 Strong's N.C. Index 3d, *Homicide* § 27.1 and cases cited therein. Prejudicial error in the jury charge requires a new trial. *State v. Cousins, supra.*

We agree with the Court of Appeals that there is no evidence in this case that defendant shot and killed the deceased in self-defense. A person may kill another when he is free from fault in bringing on the affray and it is necessary, or reasonably appears to be necessary, to kill in order to protect himself from death or great bodily harm. *State v. Spaulding*, 298 N.C. 149, 257 S.E. 2d 391 (1979). There is no evidence in this record that defendant acted out of a reasonable belief that it was necessary for him to kill in order to save *himself* from death or great bodily harm.

We shall discuss the remaining assignment of error that defendant brought forward and argued in his brief since it is likely to recur upon the retrial of this case.

[5] By his seventh assignment of error, defendant contends that the trial judge erred in failing to instruct the jury that an honest but unreasonable belief that it was necessary to kill the deceased should result in a verdict of guilty of voluntary manslaughter. Defendant relies upon this Court's decision in *State v. Thomas*, 184 N.C. 757, 114 S.E. 834 (1922), in support of this assignment. In *Thomas* it was held that an honest but unreasonable belief in the necessity to kill in self-defense would rebut a presumption of malice and support a verdict of guilty of voluntary manslaughter.

It is the law in this State that a person may kill when it is actually or apparently necessary to do so in order to avoid death or great bodily harm. *State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. Spaulding, supra*; *State v. Clay*, 297 N.C. 555, 256 S.E. 2d 176 (1979); *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated*, 429 U.S. 809 (1976); *State v. Fowler*, 250 N.C. 595, 108 S.E. 2d 892 (1959); *State v. Goode*, 249 N.C. 632, 107 S.E. 2d 70 (1959); *State v. Rawley*, 237 N.C. 233, 74 S.E. 2d 620 (1953). The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the defendant at the time of the killing. *State v. Herbin, supra; State v. Spaulding, supra; State v. Clay, supra; State v. Marsh*, 293 N.C. 353, 237 S.E. 2d 745 (1977); *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24 (1968); *State v. Ellerbe*, 223 N.C. 770, 28 S.E. 2d 519 (1944).

These principles relate equally to self-defense, *State v. Spaulding, supra,* defense of a family member, *State v. Fowler, supra,* and defense of home (with the additional right in defense of home to use deadly force to prevent a forcible entry when

defendant reasonably apprehends death, great bodily harm, *or that the intruder will commit a felony*). *State v. McCombs, supra; State v. Miller, supra.* Use of excessive force while acting without malice and while otherwise acting in defense of a family member or in defense of home is voluntary manslaughter. *See, State v. Fowler, supra;* 6 Strong's N.C. Index 3d, *Homicide* § 28.3 and cases cited therein.

A defendant who honestly believes that he must use deadly force to repel an attack but whose belief is found by the jury to be unreasonable under the surrounding facts and circumstances, has, by definition, used excessive force. This rule was made clear in *State v. Clay, supra,* where Justice (now Chief Justice Branch) wrote:

> "[W]here the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law." *State v. Clay, supra* at 563, 256 S.E. 2d at 182; *see also,* LaFave & Scott, *Criminal Law* § 53, pp. 392-94, § 77, pp. 583-84 (1972).

Thus, for all practical purposes, to state that one who, while acting in defense of a family member or in defense of home uses excessive force is guilty of voluntary manslaughter is but another way of stating that one who has an honest but unreasonable belief that it is necessary or apparently necessary to kill is guilty of voluntary manslaughter. Since *State v. Thomas, supra,* we have not spoken of this rule of law in terms of an "honest but unreasonable belief that it is necessary or apparently necessary to kill." Instead, we have stated that use of excessive force while acting without malice and in defense of a family member or in defense of home is voluntary manslaughter. Here, the trial judge instructed with respect to the use of excessive force while acting in defense of a family member that,

> "If the State proves beyond a reasonable doubt that the defendant, though otherwise acting in lawful defense of a family member, used excessive force or was the aggressor, though he had no murderous intent when he entered the fight, the defendant would be guilty of voluntary manslaughter.

. . .

Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of October, 1977, Lonnie Jones intentionally and without justification or excuse shot Lonnie Gregory, Jr. with a .22 caliber rifle thereby proximately causing Lonnie Gregory, Jr.'s death, but the State has failed to satisfy you beyond a reasonable doubt that the defendant acted with malice because it has failed to satisfy you beyond a reasonable doubt that Lonnie Jones did not act in defense of family member, but the State has proved beyond a reasonable doubt that Lonnie Jones used excessive force in his defense of a family member or was the aggressor, it would be your duty to return a verdict of guilty of voluntary manslaughter."

The above instructions are an accurate statement of the law. This assignment of error is overruled.

For failure by the trial judge to charge on defense of home and voluntary manslaughter by reason of a killing in the heat of passion, defendant is entitled to a new trial. Defendant is entitled to an instruction on voluntary manslaughter due to the use of excessive force while otherwise acting in defense of a family member and in defense of home or due to defendant's being the aggressor. He is not entitled to an instruction on self-defense or voluntary manslaughter due to an honest but unreasonable belief in the necessity (real or apparent) to kill.

New trial.