An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-495

Filed 20 May 2026

Wake County, No. 22CR205293-910

STATE OF NORTH CAROLINA

      v.

TIFFANY LATOYA JACKSON, Defendant.

Appeal by defendant from judgment entered 26 July 2024 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 10 March 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General I. Faison Hicks, for the State.*
>
> *Blau & Hynson, PLLC, by Warren D. Hynson, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Tiffany L. Jackson appeals from judgment entered consistent with a jury verdict convicting her of first-degree murder under the felony murder rule, based on evidence that she fired a shot from her vehicle at another vehicle, resulting in the death of the other driver (the "victim"). On appeal, Defendant contends the trial court failed to instruct the jury on the castle doctrine as found in G.S. 14-51.2,

contending there was evidence she fired the shot to prevent the victim from entering her vehicle. She also claims she received ineffective assistance of counsel. We conclude Defendant received a fair trial, free from reversible error.

## I. Background

After a collision in a shopping center parking lot between Defendant's and the victim's vehicles, Defendant fired one bullet at the victim's car. That bullet entered the bottom right corner of the victim's rear windshield, passed through the driver's seat headrest, and struck the victim in the head. A few days later, the victim passed away from the wound.

Defendant testified at trial, regarding her encounter with the victim.

After the charge conference, where the parties discussed the applicability of self-defense, the trial court gave the jury a self-defense instruction. Defendant's counsel, however, did not request and the trial court did not give a castle doctrine instruction.

After jury deliberations, the jury convicted Defendant of first-degree murder under the felony murder rule with the predicate felony being discharging a firearm into occupied property. Defendant appealed.

## II. Analysis

Defendant raises three issues on appeal, which we address in turn.

### A. Castle Doctrine Instruction

Defendant argues the trial court plainly erred when it failed to provide the jury with a castle doctrine instruction. Defendant maintains she is entitled to the instruction because the victim was in the process of unlawfully and forcefully entering Defendant's vehicle prompting Defendant to shoot from inside her vehicle towards the victim's vehicle "to stop the attack."

The evidence tended to show as follows: Just before Defendant shot her firearm, she saw the victim driving ahead of her on a main road in an aggressive manner. They then turned into the same shopping center; the victim was ahead of Defendant. The entrance of the shopping center became congested due to the victim stopping in the middle of the entrance.

At some point, Defendant's vehicle and the victim's vehicle collided. The State's evidence showed that when Defendant attempted to go around the victim, Defendant hit the victim's car. Defendant, on the other hand, testified that after she passed the victim, the victim hit Defendant's car. Shortly thereafter, though, Defendant fired the shot which killed the victim.

Evidence at trial also conflicted on the issue of where Defendant was located when she discharged her gun. A witness for the prosecution indicated Defendant may have been outside of her vehicle. However, Defendant maintained she fired the gun while seated in her own vehicle. In any event, it is undisputed that Defendant fired her gun during the events.

"It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803 (1988) (citation omitted). And our Supreme Court has held that "[the castle doctrine] defense is a substantial and essential feature of [a] case, [so] the trial [court] must instruct on this defense when it is raised by the evidence even in the absence of any request by the defendant for special instruction." *State v. Jones*, 299 N.C. 103, 107 (1980); *see also State v. Coley*, 375 N.C. 156, 159 (2020) (explaining that there must be competent evidence of a "substantial and essential feature of the case" before a judge must give the jury instruction to the jury). Regarding our review, "we take the evidence as true and consider it in a light most favorable to the defendant." *Coley*, 375 N.C. at 159.

Generally, our statutory castle doctrine permits an individual to use deadly force "to prevent unlawful entry into the home or to terminate an unlawful entry by an intruder." *State v. Phillips*, 386 N.C. 513, 520 (2024) (citation and emphasis omitted). However, the doctrine is not limited to the home, as it also applies to vehicles. *See* N.C.G.S. § 14-51.2(b). Thus, when a lawful occupant of a motor vehicle uses deadly defensive force she is "presumed to have held a reasonable fear of imminent death or serious bodily harm to . . . herself" if two conditions are met. *Id.* Those conditions require (1) "[t]he person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a . . . motor vehicle," and (2) the lawful occupant "knew or had reason to believe that an unlawful and forcible entry . . . was occurring or had occurred." *Id.*

- 4 -

§ 14-51.2(b)(1), (2). If the jury determines both prongs are met, the lawful occupant who uses defensive force is "immune from civil or criminal liability for the use of such force," *see id.* § 14-51.2(e), unless the jury concludes the State rebutted the presumption by the exceptions (and only those exceptions) provided in G.S. 14-51.2(c) and the jury determines the use of force was not proportional, *see State v. Allison*, 388 N.C. 664, 672–73 (2025).

Crucially, and despite Defendant's contentions,[1] the statute (and our common law castle doctrine[2]) plainly requires there be evidence of an entry or an attempted entry. *See* N.C.G.S §§ 14-51.2(b) and (d); *Phillips*, 386 N.C. at 520 (reiterating the statutory castle doctrine works "to prevent unlawful entry into [a] home[, motor vehicle, or workplace] or to terminate an unlawful entry by an intruder" (citation and emphasis omitted); *Allison*, 388 N.C. at 677–78 (stating there was evidence of "an unlawful and forceful entry[ ] or an unlawful and forceful attempted entry" upon the defendant's home or curtilage when testimony indicated the victim was either in the

---

[1] Defendant contends an entry can occur by a breach of the peace due to threatened violence, and there need not be an "actual, physical entry." Defendant cites *State v. Jacobs*, 94 N.C. 950, 952 (1886), in which our Supreme Court examined the elements of the offense of forcible entry. While comparing a forcible entry (an offense applicable to land) with a forcible trespass (an offense applicable to personal property), our Supreme Court stated, "there must be something more than a mere trespass; there must be some act that amounts to a breach of the peace." *Id.*

*Jacobs* does not involve the castle doctrine, and this argument overlooks the fact that our Supreme Court was expanding upon the "forcible" element of a forcible entry. That is, for an entry to be "forcible," there must be a breach of the peace. *See id.* However, this does not obviate the need for an entry. *Id.*; *see also State v. Bryant*, 103 N.C. 436, 438 (1889).

[2] "[T]he common law may aid our understanding, but statutes set the boundaries of the law in this area." *Phillips*, 386 N.C. at 514.

defendant's home or on the defendant's porch); *see also State v. Gray*, 162 N.C. 608, 613 (1913) ("The occupant of a house has a right to resist even to the death *the entrance of persons attempting to force themselves into* [the house] against his will, when no action less than killing is sufficient to defend the house *from entrance.*" (emphasis added and citation omitted)); *State v. Miller*, 267 N.C. 409, 411 (1966) ("When a trespasser *enters upon a man's premises*, makes an assault upon his dwelling, and *attempts to force an entrance into his house . . .* a lawful occupant of the dwelling may legally prevent the entry[.]" (emphasis added)).

We find our decision in *State v. Dilworth*, 274 N.C. App. 57 (2020), instructive. There, the trial court refused to instruct the jury on the castle doctrine despite the defendant testifying that the victim was "creeping along [a] hill . . . in very close proximity of [the defendant's] household[,]" in an area the defendant "felt like" belonged to him. *Id.* at 61–64 (internal marks omitted). The evidence, even "construed in [the] [d]efendant's favor," indicated the victim "was outside the bounds of [the] [d]efendant's property and around 200–250 feet away from [the] [d]efendant's residence." *Id.* at 63. We held, even assuming G.S. 14-51.2(b)(2) (the knowledge or belief prong) was satisfied, there was "simply no evidence [the victim] was in fact in the process of unlawfully and forcefully entering, or had unlawfully and forcefully entered, a home[.]" *Id.* at 64 (citation and internal marks omitted).

Similarly, viewing the evidence in a light most favorable to Defendant, here, "there is simply no evidence" the victim entered or attempted to enter Defendant's

car. *See id.* After Defendant drove around the victim's vehicle at the entrance of the parking lot, the victim twice struck the rear passenger's-side bumper of Defendant's car, which produced a noise Defendant thought was a gunshot. The victim then began to drive to the left of Defendant's vehicle and struck Defendant's rear driver's-side bumper. Finally, the victim passed Defendant on the driver's-side of Defendant's vehicle, which Defendant perceived as the victim coming around to shoot Defendant. As the victim's vehicle approached on Defendant's driver's-side, Defendant reached for her firearm and fired it one time out of her window "to stop the attack."

However, the victim's car doors were closed with the windows rolled up, a witness testified that the victim never exited her vehicle, and when Defendant and a bystander later assisted the victim, neither saw a gun in the victim's car. That is, there was no evidence that the victim ever exited her vehicle.

While these facts may have warranted the self-defense instruction the trial court gave the jury pursuant to G.S. 14-51.3, they did not the warrant an instruction under G.S. 14-51.2. In other words, despite Defendant's fear the victim would attempt to shoot Defendant through Defendant's open window, the evidence did not show the victim was "in the process of unlawfully and forcefully entering" or that the victim "unlawfully and forcibly entered" Defendant's vehicle under G.S. 14-51.2(b)(1), *see Dilworth*, 274 N.C. App. at 64 (stating that even if the evidence could satisfy G.S. 14-51.2(b)(2), there was no evidence supporting G.S. 14-51.2(b)(1)).

We conclude the trial court did not err, much less plainly err, because the evidence did not show the victim attempted to unlawfully and forcefully enter, or unlawfully and forcibly entered, Defendant's vehicle. Therefore, the evidence did not entitle Defendant to a castle doctrine instruction.

### B. Ineffective Assistance of Counsel

Next, Defendant argues she received ineffective assistance of counsel in violation of her constitutional rights due to her counsel's failure to request a castle doctrine instruction. "[W]hether a defendant was denied effective assistance of counsel" is an issue we review de novo. *State v. Bowman*, 274 N.C. App. 214, 218 (2020). Due to our resolution of Defendant's first argument on appeal, Defendant did not receive ineffective assistance of counsel because she was not entitled to such an instruction. *See State v. Braswell,* 312 N.C. 553, 562 (1985) (ineffective assistance of counsel claims require showing that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" (citation and emphasis omitted)).

### C. Harbison Error

Turning to Defendant's last argument on appeal, she argues the trial court failed to conduct a sufficient *Harbison* inquiry after her counsel admitted her guilt during his opening statement. According to Defendant, this amounted to per se ineffective assistance of counsel. We disagree.

In *State v. Harbison*, our Supreme Court held that a per se violation of a defendant's Sixth Amendment right to effective assistance of counsel occurs when "the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." 315 N.C. 175, 180 (1985). To avoid error, a "trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decisions." *State v. Maready*, 205 N.C. App. 1, 7 (2010).

When assessing whether a defendant knowingly and voluntarily consented, we prefer the that trial court engages in an "on-the-record exchange" with the defendant, but our Supreme Court has not "set forth strict criteria for an acceptable colloquy[ ]" nor has the Court "defin[ed] such a colloquy as the sole measurement of consent[.]" *State v. Thompson*, 359 N.C. 77, 120 (2004). Ultimately, though, "[f]or us to conclude that a defendant permitted his counsel to concede his guilt . . . the facts must show, at a minimum, that [the] defendant knew his counsel were going to make such a concession." *State v. Matthews*, 358 N.C. 102, 109 (2004) (emphasis omitted).

In *Bowman*, this Court assumed even if there was an implied concession of guilt, the defendant's counsel made such a concession "with [the] [d]efendant's consent." 274 N.C. App. at 219–20. We explained the defendant knew, understood, and agreed with her counsel's strategy based on the inquiry where the trial court merely asked the defendant if she understood and agreed with the strategy to admit

- 9 -

all elements of burglary except intent. *Id.* at 220. We concluded the defendant "failed to demonstrate per se ineffective assistance of counsel under *Harbison.*" *Id.*

Likewise, in *State v. Pemberton,* we held the defendant "expressly consented to the strategy employed and the admissions made by his trial counsel." 228 N.C. App. 234, 243 (2013). We recounted how the trial court's inquiry revealed that the defendant was aware his counsel planned on admitting certain facts, these admissions were part of the defense strategy, and the defendant discussed the strategy with his attorney and "agreed . . . the strategy . . . should be the one employed in his defense." *Id.* at 243–44. Accordingly, there was no *Harbison* error. *Id.* at 244.

Here, a grand jury indicted Defendant for first degree murder. The State's theories included premeditation and deliberation and felony murder with the underlying felony being discharging a firearm into occupied property. During opening statements, Defendant's counsel argued Defendant, in fear for her life, fired her handgun into the victim's occupied car which ultimately struck and later killed the victim. Immediately after counsel finished his opening statements, the trial court removed the jury and engaged in the following inquiry with Defendant regarding whether Defendant consented to her counsel's admission of those facts:

> THE COURT: All right. Let the record reflect the jury's left the courtroom.
>
> [Defendant], your attorney in opening statement has admitted that you fired a shot that -- that hit the alleged victim in this case. That's something you have a constitutional right to have the jury determine. And you

still have that right to have the jury determine that, but by the fact that your attorney in opening statements made that admission, that could impact the jury. Were -- are you -- do you approve of his admitting that in his opening statement?

[DEFENDANT]: Yes.

THE COURT: And I assume at some point you discussed that with him and this is a strat -- this was a strategy you were taking in your self-defense argument.

[DEFENDANT]: Yes.

THE COURT: All right. And you did it -- and you had discussions with him beforehand, and you're satisfied that that was the appropriate strategy.

[DEFENDANT]: Yes, sir.

THE COURT: All right. Let the record reflect I had this conversation with [Defendant] in open court, that she had previously discussed [with] her counsel admitting she in fact pulled the trigger of the weapon that struck the -- the alleged victim, and that she approved of that. We can go ahead and bring the jury back in.

Assuming but not deciding Defendant's counsel's factual statements amounted to a concession, the trial court's inquiry reflects Defendant not only *knew* her counsel would make those statements, *see Matthews*, 358 N.C. at 109, but also that these statements were part of Defendant's self-defense strategy Defendant previously discussed with her counsel and that she approved. *See Bowman*, 274 N.C. App. at 220; *Pemberton*, 228 N.C. App. at 243–44.

Accordingly, even if Defendant's counsel conceded Defendant fired the fatal shot, Defendant previously knew of and consented to such a concession. Thus, the

trial court did not err with respect to Defendant's final argument on appeal.[3]

### III.    Conclusion

We conclude Defendant received a fair trial, free from reversible error.

NO ERROR.

Judges ZACHARY and COLLINS concur.

Report per Rule 30(e).

---

[3] We also conclude *Bowman* is dispositive of an issue Defendant does not raise on appeal, but that we feel compelled to briefly address: "Ordinarily, when we do not find per se ineffective assistance of counsel under *Harbison*, 'the issue concerning ineffective assistance of counsel should be examined pursuant to the normal ineffectiveness standard set forth in *Strickland v. Washington*[.]'  We do not reach this analysis, however, because Defendant argued only that her counsel's conduct amounted to per se ineffective assistance." *Bowman*, 274 N.C. App. at 220 n.2 (citation omitted); *see also* N.C. R. App. Pro. 28(b)(6).