STATE OF NORTH CAROLINA v. CLARENCE RICHARDSON

No. 402PA93

(Filed 8 September 1995)

### Homicide § 596 (NCI4th)— second-degree murder and assault—instructions—belief that killing necessary

The trial court did not err in a prosecution in which defendant was convicted of second-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury by instructing the jury that it could find that defendant acted in self-defense only if defendant reasonably believed that under the circumstances it was necessary "to kill" the victims. The self-defense instruction in this case did not read into self-defense an element that is not part of second-degree murder and did not impermissibly lessen the State's burden of disproving defendant's claim of self-defense. The instruction as given can be read consistently and sensibly without changing the language of the first element of self-defense to read that "it was reasonably necessary to shoot [or use deadly force] in order to save himself from death or great bodily harm." The language in *State v. Watson*, 338 N.C. 168, that indicates otherwise is expressly disavowed.

**Am Jur 2d, Homicide §§ 485, 514; Trial § 1266.**

**Homicide: modern status of rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.**

Justice ORR did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 112 N.C. App. 252, 435 S.E.2d 84 (1993), setting aside judgments entered by Lewis, J., at the 24 February 1992 Criminal Session of Superior Court, Mecklenburg County, upon defendant's conviction of two counts of second-degree murder and awarding defendant a new trial. Heard in the Supreme Court 9 January 1995.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State-appellant.*

*Marc D. Towler, Assistant Public Defender, for defendant-appellee.*

STATE v. RICHARDSON

[341 N.C. 585 (1995)]

PARKER, Justice.

Defendant, upon proper bills of indictment, was convicted of one count of assault with a deadly weapon with intent to kill inflicting serious injury and two counts of second-degree murder in violation of N.C.G.S. § 14-32(a) and N.C.G.S. § 14-17, respectively. The trial judge imposed consecutive sentences of fifteen years' imprisonment, forty-five years' imprisonment, and life imprisonment. On defendant's appeal the Court of Appeals found reversible error in defendant's second-degree murder convictions and ordered a new trial. The State's petition for discretionary review of the Court of Appeals' decision was allowed by this Court on 2 December 1993.

The evidence at trial tended to show that Dr. James Kirkpatrick was a dentist in Ohio; he had come to Charlotte, North Carolina, on 17 July 1991 to visit his brothers, Brian and Barry Kirkpatrick. James, a former college varsity football player, was 6'6" tall and weighed 305 pounds. Brian Kirkpatrick was 5'11" tall and weighed 216 pounds. Barry Kirkpatrick was 6' tall and weighed 182 pounds. The brothers spent the evening of 17 July 1991 drinking alcohol and eating. Shortly before midnight, James, Brian, and Barry arrived at Leather and Lace, a private topless club in Charlotte, North Carolina. The brothers entered the foyer of the club but were denied admittance to the club by Dick Pincelli, an employee who believed James Kirkpatrick was intoxicated. James, Brian, and Barry began arguing with Pincelli.

Defendant Richardson was the manager of the club; he was 6'2" tall and weighed 180 pounds. He was made aware of the disturbance in the foyer and went to investigate along with a customer, Danny Thompson. Before entering the foyer, defendant went to his office and got a .45-caliber pistol. When defendant entered the foyer, the three brothers had already left the foyer and were outside the club in the parking lot. By this time Pincelli had called the police.

Defendant testified that as he stood in the foyer in front of the glass front door looking out into the parking lot, he saw Barry Kirkpatrick leaning against a glass pane to the left of the door. James and Brian Kirkpatrick were in the parking lot behind Barry, arguing with each other. As defendant opened the front door of the club to tell the Kirkpatricks to leave, Barry moved and pinned defendant's right arm between the door and the frame. While defendant was pinned James Kirkpatrick reached through the opening in the door and told defendant, "You f—— with us, we will kill you." James then told Barry to let go of the door. As the door opened, defendant shot Barry and

then James; he shot at James a second time when James continued to advance towards him. At this time, according to defendant, Brian began running towards the front door; and defendant shot him also.

James Kirkpatrick testified that the brothers argued with Pincelli in the foyer of the club and then left when told the police had been called. According to James, the brothers were in the parking lot walking towards their car when they heard a voice coming from the front door of the club. James and Barry turned towards the voice, and Barry started to walk back towards the door. Barry walked up to the front glass door and put his hands on the door. James grabbed Barry's arm and tried to pull him away from the door, telling him, "It's not worth it." At this time Brian was standing behind James and Barry. James then heard four shots and realized he had been hit. James fell to the ground; he saw Barry lying on the ground next to him, turned over, and saw Brian also lying on the ground.

Defendant waited for the police to arrive; and when they did, he told them, "I did it. . . . They were all over me." Brian and Barry died at the scene from gunshot wounds to the chest. James lived but suffered serious injuries to his elbow, hip, and abdomen. On the night of the murders, James had a blood alcohol content equivalent to a breathalyzer reading of .21; Brian had a blood alcohol content equivalent to .14 on the breathalyzer; and Barry had a blood alcohol content equivalent to .19 on the breathalyzer.

The sole issue presented for our review is whether the trial court erred in instructing the jury that it could find that defendant acted in self-defense only if defendant reasonably believed that under the circumstances it was necessary "to kill" the victims. Defendant contended, and the Court of Appeals agreed, that the jury should have been instructed that the jury could find that defendant acted in self-defense if it found that defendant reasonably believed under the circumstances that it was "necessary to shoot [or use deadly force against] the deceased in order to save himself from death or great bodily harm." *State v. Richardson*, 112 N.C. App. 252, 259, 435 S.E.2d 84, 88 (1993). The State contends that the Court of Appeals erred in modifying the pattern jury instructions on self-defense for second-degree murder.

This Court has repeatedly held that a defendant is entitled to an instruction on perfect self-defense when evidence is presented tending to show:

"(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)); *see also State v. Watson*, 338 N.C. 168, 179-80, 449 S.E.2d 694, 701 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 569 (1995); *State v. Reid*, 335 N.C. 647, 670, 440 S.E.2d 776, 789 (1994); *State v. Maynor*, 331 N.C. 695, 699, 417 S.E.2d 453, 455 (1992); *State v. Gappins*, 320 N.C. 64, 71, 357 S.E.2d 654, 659 (1987); *State v. Mize*, 316 N.C. 48, 51, 340 S.E.2d 439, 441 (1986); *State v. Wilson*, 304 N.C. 689, 694-95, 285 S.E.2d 804, 807 (1982).

"Under the law of perfect self-defense, a defendant is altogether excused if all of the above four elements existed at the time of the killing." *Reid*, 335 N.C. at 670, 440 S.E.2d at 789. "[U]nder the law of imperfect self-defense, if the first two elements existed at the time of the killing, but defendant, although without murderous intent, was the aggressor in bringing on the affray or used excessive force, defendant is guilty at least of voluntary manslaughter." *McAvoy*, 331 N.C. at 596, 417 S.E.2d at 497.

In his brief defendant contends that the instruction given by the trial court "blurred the distinction between [an] unreasonable belief in the necessity to act in self-defense and [the] use of excessive force in self-defense, thereby denying defendant the possibility of a verdict of voluntary manslaughter where it was reasonably necessary to use deadly force, but not to kill."

In *McAvoy* the Court determined that if the defendant had an unreasonable belief that it was necessary to kill to save himself from

death or great bodily harm, the defendant was guilty of murder. *Id.* at 601, 417 S.E.2d at 500. The Court also concluded that if the defendant was reasonable in his belief that it was necessary to kill to save himself from death or great bodily harm but used more force than was reasonably necessary to protect himself, then defendant was guilty of manslaughter. *Id.* In *McAvoy* the defendant argued that elements two and four of the self-defense instruction are legally equivalent and that the same verdict should result from the disproof of either element. *Id.* at 596, 417 S.E.2d at 497. This Court rejected defendant's argument and determined that elements two and four are not legally equivalent. The Court held that the State's disproof of element two, that defendant's belief that it is necessary "to kill" to save himself from death or great bodily harm was reasonable, permits a conviction of murder; whereas, the State's disproof only of element four, that defendant did not use excessive force to protect himself from death or great bodily harm, permits a conviction of manslaughter. *Id.* at 601, 417 S.E.2d at 500.

Recognizing that we addressed this issue in *McAvoy*, defendant contends that *McAvoy* is not dispositive since the Court in *McAvoy* "left unaddressed the issue of what belief is necessary on the part of a defendant under element (2)." Defendant argues that if the belief in elements one and two is a belief that it is necessary "to kill," then there is no legal difference between elements two and four and the "problem of inconsistent verdicts arising from the equivalence of those two elements remains." On the other hand this problem is, according to defendant, eliminated if the belief in elements one and two is defined as belief in the "necessity to shoot (or use deadly force against)" the deceased. Defendant then identifies the conflict thusly: "[S]ince killing based upon an unreasonable belief in the need to kill in self-defense is identical to the use of excessive force, these two phrasings of one criterion should result in identical legal consequences." This very contention was rejected by this Court in *McAvoy*, where the Court stated:

> We agree with the holding in *Jones* that the defendant was "not entitled to an instruction on self-defense or voluntary manslaughter due to an honest but unreasonable belief in the necessity . . . to kill." [*State v. Jones*, 299 N.C. 103, 113, 261 S.E.2d 1, 8 (1980).] However, we do not adopt the *Jones* Court's reading of the language in [*State v. Clay*, 297 N.C. 555, 563, 256 S.E.2d 176, 182 (1979),] when it says that "for all practical purposes, . . . one who . . . uses excessive force is guilty of voluntary manslaughter is

STATE v. RICHARDSON

[341 N.C. 585 (1995)]

> . . . another way of stating that one who has an honest but unreasonable belief that it is necessary . . . to kill is guilty of voluntary manslaughter." [*Jones,* 299 N.C. at 112, 261 S.E.2d at 8.] The quoted language [in *Jones*] [from] *Clay* does not equate elements two and four.

331 N.C. at 599, 417 S.E.2d at 499.

A "reasonable apprehension of losing life or receiving great bodily harm . . . is all that the law requires of [a defendant] in order to excuse the killing of his adversary." *State v. Ellerbe,* 223 N.C. 770, 773, 28 S.E.2d 519, 521 (1944). In reviewing a claim of self-defense,

> "it should be ascertained by the jury, under the evidence and proper instructions of the court, whether [defendant] had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of his apprehension [that he was about to lose his life or to receive great bodily harm] must always be for the jury, and not the defendant, to pass upon."

*Id.* at 774, 28 S.E.2d at 522 (quoting *State v. Barrett,* 132 N.C. 1005, 1008, 43 S.E. 832, 833 (1903)).

The critical question for purposes of elements one and two of self-defense is whether defendant had a reasonable belief that he was in danger of great bodily harm or death. In a homicide case a defendant cannot argue that he was acting in self-defense when there is no evidence that he feared he was going to be killed or suffer great bodily harm. *Reid,* 335 N.C. at 671-72, 440 S.E.2d at 790. If, however, defendant had such a reasonable belief, then the law does not preclude him from killing in self-defense. The instrumentality or method of force employed by defendant which ultimately results in the victim's death is irrelevant for purposes of determining the reasonableness of defendant's belief under element two. Because the only justification for the use of deadly force is a reasonable belief that one is in danger of death or great bodily harm, "where the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law." *State v. Clay,* 297 N.C. 555, 563, 256 S.E.2d 176, 182 (1979), *overruled on other grounds by State v. McAvoy,* 331 N.C. 583, 601, 417 S.E.2d 489, 500, *and by State v. Davis,* 305 N.C. 400, 415, 290 S.E.2d 574, 583 (1982).

**STATE v. RICHARDSON**

[341 N.C. 585 (1995)]

In this case, in instructing on the first two elements of self-defense, the trial court instructed the jury to consider the circumstances as they appeared to defendant, including "the size, age, strength of the Defendant as compared to the victim; the fierceness of the assault, if any, . . . upon the Defendant; whether or not the victim had any weapon in his possession; and all other facts and circumstances." All of these considerations go to the reasonableness of defendant's belief that he was being threatened with loss of life or great bodily harm. The jury was also instructed:

> As a general rule, the law does not justify or excuse the use of a deadly weapon to repel a simple assault. This principle does not apply, however, where from the testimony it may be inferred that the use of such weapon was, or appeared to be, reasonably necessary to save the person assaulted from great bodily harm.

This instruction also focused the jury on the reasonableness of defendant's belief that he may suffer great bodily harm at the hands of the victim, not on the reasonableness of the force used.

After being instructed that defendant would not be guilty of murder or manslaughter if he acted under a reasonable apprehension of death or serious bodily injury and was not the aggressor and did not use excessive force, the jury was instructed as to the meaning of excessive force and how it affected a verdict of voluntary manslaughter. The jury was told:

> A defendant uses excessive force if he uses more force than it reasonably appeared to him to be necessary at the time of the killing. It is for you, the jury, to determine the reasonableness of the force used by the Defendant under all of the circumstances as they appeared to the Defendant at the time.

Pursuant to this instruction the jury was specifically told to evaluate the force used by defendant under element four, not elements one or two.

The instruction as given to the jury in this case distinguished between elements two and four. Requiring the State to disprove the reasonableness of defendant's belief that he was under threat of death or great bodily harm under element two allows the jury to consider the reasonableness of defendant's use of force under element four if the State fails to disprove element two. This understanding of the self-defense instruction is consistent with the Court's holding in *McAvoy* that there is a difference between elements two and four of

the self-defense instruction. *McAvoy*, 331 N.C. at 601, 417 S.E.2d at 500.

In *Watson* this Court once again addressed issues involving the self-defense instruction. This Court considered whether the defendant's motion to dismiss should be granted on the ground that the State failed to prove that defendant did not act in self-defense. *Watson*, 338 N.C. at 175, 449 S.E.2d at 699. This Court stated that in order to disprove the claim of self-defense, the State needed to prove beyond a reasonable doubt that the defendant did not believe it was necessary to kill to save himself from death or great bodily harm or that if the defendant had such a belief, it was unreasonable because the circumstances as they appeared to the defendant were not sufficient to create such a belief in the mind of a person of ordinary firmness. *Id.* at 180, 449 S.E.2d at 702. This Court concluded that the State may have disproved the first and second elements of self-defense because, based on the evidence, the "jury could have found that the victim did nothing to create a reasonable fear of imminent danger in the mind of a person of ordinary firmness." *Id.* at 181, 449 S.E.2d at 702. This Court was focusing on defendant's reasonableness in determining that a threat existed when determining that the State may have disproved elements one and two.

However, in *Watson* this Court also stated "that, as a general proposition, instructing a jury in terms of the need 'to use deadly force,' rather than 'to kill,' could be appropriate if the evidence supported such an instruction." *Id.* at 182-83, 449 S.E.2d at 703. The Court then went on to state that it was not necessary in that case to interject different language into the self-defense instruction, as it was clear that the defendant there intended to kill the victim. *Id.* at 183, 449 S.E.2d at 703.

The language in *Watson* indicating that in certain situations, the self-defense instruction should read that it was necessary "to shoot or use deadly force" was *dicta*, and that language is now expressly disavowed. We conclude that it is not necessary to change the self-defense instruction to read necessary "to shoot or use deadly force" in order to properly instruct a jury on the elements of self-defense. The first and second elements of self-defense require a consideration of whether the "victim did [something] to create a reasonable fear of imminent danger in the mind of a person of ordinary firmness." *Id.* at 181, 449 S.E.2d at 702. The fourth element of self-defense addresses the reasonableness of the defendant's choice of force used to protect

himself from death or great bodily harm. An instruction that defendant had a reasonable belief in the necessity "to shoot or use deadly force" rather than "to kill" is not necessary since the focus in elements one and two is on the reasonableness of defendant's belief that he must protect himself from death or great bodily harm, not the force used by defendant. Thus, defendant's argument is without merit.

In the alternative defendant argues that the instruction is erroneous in this case because it reads into self-defense a specific "intent to kill" element that is inconsistent with elements of second-degree murder. Defendant notes that a specific intent to kill is not required in second-degree murder and should not be read into a plea of self-defense where defendant is charged with second-degree murder but not first-degree murder. The Court of Appeals agreed with defendant on this point, stating that instructing the jury that

> "it appeared to the defendant and he believed it to be necessary to *kill* the deceased in order to save himself from death or great bodily harm," reads into this defense an element (intent to kill) that is not part of second degree murder.

*Richardson*, 112 N.C. App. at 258, 435 S.E.2d at 87.

Contrary to the Court of Appeals' decision and defendant's argument, we conclude that the self-defense instruction as given with the second-degree murder instruction does not interject a "specific intent to kill" element into self-defense that is not present in second-degree murder.

"While an intent to kill is not a necessary element of murder in the second degree, that crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death." *State v. Lang*, 309 N.C. 512, 524-25, 308 S.E.2d 317, 323 (1983). In interpreting the charge of second-degree murder, this Court has held that

> [n]either second degree murder nor voluntary manslaughter has as an essential element an intent to kill. In connection with these two offenses, the phrase "intentional killing" refers not to the presence of a specific intent to kill, but rather to the fact that the *act* which resulted in death is intentionally committed and is an act of assault which in itself amounts to a felony or is likely to cause death or serious bodily injury. Such an act of assault committed under circumstances sufficient to show malice is second

STATE v. RICHARDSON

[341 N.C. 585 (1995)]

degree murder. Such an act of assault committed in the heat of passion suddenly aroused by adequate provocation, or in the imperfect exercise of the right of self-defense, is voluntary manslaughter.

*State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980).

This Court went on to hold that

a killing in self-defense is necessarily an "intentional killing" insofar as it is accomplished by an intentional act. When asserted in response to a charge of intentional homicide such as second degree murder or voluntary manslaughter, a plea of self-defense is a plea of confession and avoidance. By it a defendant admits, for example, that he intentionally shot his assailant but that he did so justifiably to protect himself from death or great bodily harm.

*Id.* at 164, 261 S.E.2d at 797.

Contrary to the Court of Appeals' decision, the language in the self-defense instruction does not read into the defense an "intent to kill" that is not an element of second-degree murder. A killing in self-defense involves an admitted, intentional act, as does second-degree murder. However, simply because defendant admitted intentionally committing an act resulting in death does not mean that defendant has admitted forming a specific "intent to kill."

In this case the trial court instructed the jury:

The essential elements of second degree murder then are these:

First, that the Defendant intentionally and with malice killed the victim with a deadly weapon.

So you would want to know what we mean by intentionally and what we mean by malice. An intentional killing refers not to the presence of a specific intent to kill, but rather to the fact that the act which resulted in death is intentionally committed and is an act of assault which in itself amounts to a felony, or is likely to cause death or serious bodily injury.

The trial court, in instructing on self-defense, stated that

defendant[] would be excused of second degree murder on the grounds of self[-]defense if: first, it appeared to him, and he rea-

sonably believed it to be necessary to kill the victim in order to save himself from death or great bodily harm at the hands of Brian, as you consider his case, or at the hands of Barry, as you consider his case; and, second, that the physical circumstances, physical facts and circumstances as they appeared to the Defendant at the time, were sufficient to create such a belief in the mind of a person of ordinary [firmness].

The jury was thus instructed that second-degree murder involved an "intentional killing," but it was also specifically instructed that an intentional killing did not refer to the "presence of a specific intent to kill." The jury was instructed that defendant would be excused of committing second-degree murder if he "reasonably believed it was necessary to kill the victim in order to save himself from death or great bodily harm." There is no reason to suppose that the jury read the self-defense language to include as an element that defendant formed a "specific intent to kill" the victims. The specific intent to kill that is not present in second-degree murder is the intent to kill with premeditation and deliberation, which is an element of first-degree murder. *State v. Hammonds*, 290 N.C. 1, 6, 224 S.E.2d 595, 599 (1976). No mention of such an element in second-degree murder was made in the instructions to the jury, and the jury was specifically instructed in this case that an intentional killing does not include a specific intent to kill. Reviewing the instructions given to the jury, we conclude that the jury would not have interpreted the self-defense instruction to include a specific intent to kill, an element not necessary for a conviction of second-degree murder. Thus, defendant was not prejudiced when he asserted self-defense in this case where he was charged with second-degree murder.

Defendant also argues that the self-defense instruction as given is erroneous because it lowers the State's burden of disproving self-defense. The Court of Appeals also agreed with defendant on this point, stating that the submission of this instruction

renders impermissibly easier the State's burden of disproving the first element or the second element of perfect self-defense since the circumstances that would justify the reasonableness of an intent to kill in self-defense would be graver than those justifying the reasonableness of an intentional killing, as that phrase is defined.

*Richardson*, 112 N.C. App. at 258, 435 S.E.2d at 87.

To begin, we note again that the self-defense instruction as given does not include as an element a specific intent to kill. Additionally, the burden on the State in elements one and two is to disprove that defendant reasonably believed that he was being threatened with death or great bodily harm. As discussed in detail above, the focus of element two is the reasonableness of defendant's apprehension of death or great bodily harm, not the reasonableness of the force used in self-defense, which the jury is specifically instructed to consider under element four. Thus, the State's burden is not lessened by requiring it to disprove that defendant had a reasonable belief that it was necessary "to kill" in order to save himself from death or great bodily harm, rather than requiring the State to disprove that defendant had a reasonable belief that it was necessary "to shoot or use deadly force" to save himself from death or great bodily harm.

Finally, defendant argues that the self-defense instruction is erroneous because it incorrectly focuses on the result of the action taken in self-defense, rather than the necessity of the action itself. Defendant argues that only the action, here shooting, not the result, killing, need be justified as being necessary to satisfy the first and second elements of self-defense.

As discussed previously, elements one and two focus not on the action taken or on the result, but rather on defendant's reasonableness in believing that he had to protect himself from death or great bodily harm. In considering elements one and two, this jury was instructed to consider the circumstances that may have created the belief that there was a threat of death or great bodily harm: the "size, age, strength of the Defendant as compared to the victim; the fierceness of the assault . . . ; [and] whether or not the victim had any weapon in his possession." Requiring, as defendant urges, the instruction in elements one and two to focus on the reasonableness of the specific action taken by defendant could potentially make elements two and four involve similar considerations. Such an interpretation of the elements was disavowed in *McAvoy*, where this Court disagreed with defendant's contention that the self-defense instruction involved legally equivalent considerations in elements two and four. *McAvoy*, 331 N.C. at 597, 417 S.E.2d at 498. Element four specifically requires a jury to consider the force used by defendant. The self-defense instruction is consistent as written and given to the jury in this case. Modification of the wording in elements one and two is not necessary, and we specifically decline to do so.

ISENHOUR v. UNIVERSAL UNDERWRITERS INS. CO.

[341 N.C. 597 (1995)]

In conclusion, we hold that the self-defense instruction given in this case did not read into self-defense an element that is not part of second-degree murder and did not impermissibly lessen the State's burden in disproving defendant's claim of self-defense. The self-defense instruction as given can be read consistently and sensibly without changing the language of the first element of self-defense to read that "it was reasonably necessary to shoot [or use deadly force] in order to save himself from death or great bodily harm." The language in *State v. Watson*, 338 N.C. 168, 449 S.E.2d 694, that indicates otherwise is expressly disavowed. The decision of the Court of Appeals vacating the trial court's judgments and awarding the defendant a new trial is reversed, and this case is remanded to that court for further remand to the Superior Court, Mecklenburg County, for reinstatement of the judgments.

REVERSED AND REMANDED.

Justice ORR did not participate in the consideration or decision of this case.