STATE OF NORTH CAROLINA v. TIMOTHY LEONARD JOHNSON

No. 503A95

(Filed 13 June 1996)

1. **Evidence and Witnesses § 2273 (NCI4th)— first-degree murder—opinion of pathologist—formal training as forensic pathologist not complete—distance from which gun fired**

The trial court did not err in a first-degree murder prosecution by allowing a doctor to testify to the cause of death and the distance from which the shot was fired where the doctor was a Fellow in the Office of the Chief Medical Examiner in Chapel Hill, was not yet certified, and had not completed his formal training as a forensic pathologist. The doctor had performed a number of autopsies and was admitted as an expert in pathology as opposed to an expert in forensic pathology. An expert in pathology has long been permitted to testify as to the victim's cause of death and it has been held that an expert certified in pathology is qualified to give an opinion regarding the range from which a gun might have been fired when that opinion, as here, is incident to his examination.

**Am Jur 2d, Expert and Opinion Evidence § 262.**

STATE v. JOHNSON

[343 N.C. 489 (1996)]

**2. Homicide § 471 (NCI4th)— first-degree murder—instruc-
tions—no error**

There was no plain error in a first-degree murder prosecution
where defendant contended that the trial court erred by reading
the pattern jury instructions to the jury and not giving the self-
defense instruction in connection with the instruction on the
felony of discharging a firearm into occupied property, in
instructing the jury that the State need only prove that defendant
was the aggressor in bringing on the fatal altercation in order to
find him guilty of first-degree murder, and in omitting essential
elements of specific intent to kill and self-defense in portions of
its final mandate regarding first-degree murder on the basis of
premeditation and deliberation. The trial judge completely and
correctly instructed the jury on self-defense and first-degree mur-
der in accord with the pattern jury instructions, the jury found
defendant guilty of first-degree murder on the bases of felony
murder and of premeditation and deliberation, and there was
overwhelming evidence to support the jury verdict.

**Am Jur 2d, Homicide §§ 482 et seq.**

**Accused's right, in homicide case, to have jury
instructed as to both unintentional shooting and self-
defense. 15 ALR4th 983.**

**3. Homicide § 596 (NCI4th)— first-degree murder—instruc-
tions—self-defense**

The trial court did not err in a first-degree murder prosecu-
tion by instructing the jury that, in order to be entitled to the ben-
efit of self-defense, defendant must have reasonably believed that
it was necessary to kill the victim in order to protect himself from
death or serious bodily injury. Defendant has given no compelling
reason to depart from the precedent in *State v. Richardson*, 341
N.C. 585.

**Am Jur 2d, Homicide §§ 519 et seq.**

**Homicide: modern status of rules as to burden and
quantum of proof to show self-defense. 43 ALR3d 221.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment
imposing sentence of life imprisonment entered by Jenkins, J., at the
15 May 1995 Criminal Session of Superior Court, Johnston County,

upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 14 May 1996.

*Michael F. Easley, Attorney General, by James P. Erwin, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant, Timothy Leonard Johnson, was indicted for the first-degree murder of Willie Gene Spence. He was tried noncapitally and found guilty of first-degree murder on the basis of premeditation and deliberation as well as under the felony murder rule. The trial court imposed the mandatory sentence of life imprisonment.

Defendant makes five arguments on appeal to this Court. After reviewing the record, transcript, and briefs, we conclude that defendant received a fair trial, free of prejudicial error.

The State's evidence tended to show the following facts and circumstances: On 1 August 1994, defendant, the victim, and Angela Burrell were participants in a love triangle. Burrell, her brother, defendant, and Burrell's two children lived together in a trailer in Bell Hope Trailer Park in Smithfield, North Carolina. After observing the victim and Burrell conversing together outside by the victim's automobile, defendant approached the couple. Defendant appeared to be carrying a shotgun. There were two other men with defendant, but neither of them was carrying a gun. Burrell suggested to the victim that he leave; he got into his automobile, and she went into her trailer. The victim started to drive away. As the victim was driving away, defendant fired once into the windshield of the automobile. Defendant then fired a second time into the open driver's side window of the automobile. Several witnesses saw defendant carrying a shotgun, walking towards the trailer he shared with Burrell, and firing into the driver's side window of the victim's automobile.

The victim was found slumped over in his automobile. Deputy James McIver, the first officer to arrive on the scene, discovered a "fake" gun that shot "blanks". The officer determined that the gun, which was in the waistband of the victim's pants and under the victim's shirt, had not recently been fired. The victim's automobile had backed into the trailer across from Burrell's trailer and had caused

minimal damage to both the automobile and the trailer. There was blood in the interior of the automobile on the passenger's side, and there was a hole in the passenger window.

An autopsy revealed pellet wounds to the victim's head from a single gunshot blast, and a gunshot wound to the chest. The pathologist concluded that the victim died from the second blast to his chest. The shot to the victim's chest had been delivered at close range, estimated by the pathologist to have been within three or four feet. The head wound was a scalp wound that was not potentially fatal.

Defendant testified at trial. He stated that when he got up at 11:00 a.m., he went outside and found Burrell and the victim standing outside talking. Defendant asked Burrell when she was going to cook breakfast. After she responded to defendant, the victim asked Burrell, "Who is he?" Burrell replied that defendant was "her boyfriend." Defendant testified that the victim began to go "off the handle" and that the victim told defendant, that if defendant knew "what's good" for him, defendant would take his "punk a— back in the house." The victim then pulled out a handgun, pointed it at defendant, and repeated the statement. Burrell ran into the trailer, and defendant did not see her come back out.

According to defendant, he and the victim were standing at the victim's automobile facing one another. At this point, David Turpentine walked up and handed defendant a gun, stating that defendant would need it. After handing defendant the gun, Turpentine walked away. Defendant and the victim aimed their guns at one another, and defendant fired. The shot hit the front windshield of the victim's automobile. After firing the shot, defendant ran, trying to get away. The victim got into his automobile, began backing up and the front of the automobile was facing Burrell's trailer. Defendant feared the victim was going to shoot him, so he ran past the victim's automobile and fired a second shot.

[1] As his first argument, defendant contends that the trial court erred by allowing Dr. Ricky Thompson to testify, over defendant's objection, as to the cause of death and the distance from which the shot was fired. At the time the autopsy in this case was performed, Dr. Thompson, a Fellow in the Office of the Chief Medical Examiner in Chapel Hill, was not yet certified, nor had he completed formal training as a forensic pathologist. However, Dr. Thompson had performed a number of autopsies prior to performing the autopsy on the victim. Defendant objected to Dr. Thompson's testimony at trial, and the wit-

ness was admitted as an expert in pathology, as opposed to an expert in forensic pathology. Over defendant's objection, Dr. Thompson was allowed to testify as to the cause of death as well as the possible range from which the shots were fired.

This Court has long held that an expert in pathology is permitted to testify as to the victim's cause of death and has consistently allowed testimony as such. *See State v. Sanders*, 280 N.C. 67, 71, 185 S.E.2d 137, 139 (1971); *State v. Perry*, 276 N.C. 339, 345, 172 S.E.2d 541, 545 (1970). This Court has also held that "[a]n expert certified in pathology is qualified to give an opinion regarding the range from which a gun might have been fired when that opinion is incident to his examination." *State v. Pridgen*, 313 N.C. 80, 92, 326 S.E.2d 618, 626 (1985); *see also State v. Mack*, 282 N.C. 334, 344, 193 S.E.2d 71, 78 (1972). In the instant case, Dr. Thompson's opinion as to the range of the shot was incident to the autopsy he performed on the victim. Accordingly, the trial court did not err in allowing the doctor's testimony; therefore, defendant's first argument is rejected.

**[2]** For defendant's second through fifth arguments, he contends that he is entitled to a new trial because the trial court erred by reading the pattern jury instructions to the jury. We disagree.

At the outset, we note that defendant failed to object at trial to any of these alleged errors. Now, defendant argues that he is entitled to a new trial under the plain error rule. As we have stated previously,

the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), *quoted in State v. Weathers*, 339 N.C. 441, 450, 451 S.E.2d 266, 271 (1994).

Defendant contends in his second, fourth, and fifth arguments that the trial court erred in not giving the self-defense instruction in connection with the instruction on the felony of discharging a firearm into occupied property, in instructing the jury that the State need only prove that defendant was the aggressor in bringing on the fatal alter-cation in order to find him guilty of first-degree murder, and in omit-ting essential elements of specific intent to kill and self-defense in portions of its final mandate regarding first-degree murder on the basis of premeditation and deliberation. We note that the trial judge did completely and correctly instruct the jury on self-defense and first-degree murder in accord with the pattern jury instructions. We further observe that the jury found defendant guilty of first-degree murder on the bases of felony murder and of premeditation and deliberation and that there was overwhelming evidence to support the jury verdict.

Therefore, we conclude that this is not the exceptional case where, after reviewing the entire record, we can say that the claimed errors are so fundamental that justice could not have been done or that the claimed errors had a probable impact on the jury's finding that the defendant was guilty. Accordingly, we reject defendant's sec-ond, fourth, and fifth arguments.

[3]  As his third argument, defendant contends that the trial judge erred by instructing the jury that, in order to be entitled to the bene-fit of self-defense, defendant must reasonably believe that it was nec-essary to kill the victim in order to protect himself from death or seri-ous bodily injury. Defendant concedes that this Court recently found no error in jury instructions on self-defense that are identical to the ones given in the instant case. *State v. Richardson*, 341 N.C. 585, 560, 461 S.E.2d 724, 728 (1995). Defendant has given no compelling reason for this Court to depart from its precedent. Accordingly, we reject defendant's third argument.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.