THORNBURG, Judge.
Defendant was indicted on one charge of murder. A jury found defendant guilty of second-degree murder. Defendant appeals.
Sometime after midnight on 21 December 2000, William Henry Jones was shot in the chest outside of 104 Townhouse Court in Rocky Mount, North Carolina. That address was the home of Jones's sister, Tamara Jones. Tamara arrived home from work that night sometime around 9:30 p.m., to find her boyfriend, Walter Lyons, her children, and her sister, Monique Jones, in the home. Tamara asked Monique and Walter where her other siblings, Stephanie, Demetrice, and William Jones, were, as Tamara had spoken with them by phoneearlier that night while they were at her home. Monique told Tamara that they had gone across the street to the "Liquor House."
After Tamara had been home for an hour to an hour and a half, Stephanie arrived and was very upset and crying. Stephanie told Tamara that she and defendant had been arguing at the Liquor House. Demetrice returned from the Liquor House shortly thereafter and urged Stephanie to go outside and speak with defendant. Tamara also urged Stephanie to speak with defendant so as to avoid any trouble. After Stephanie had been outside for several minutes, Tamara heard defendant yelling obscenities at Stephanie.
As Stephanie and defendant were arguing, William left the Liquor House and joined Stephanie and defendant in Tamara's front yard. William attempted to intervene in the fight on Stephanie's behalf. This angered defendant, who began shouting obscenities at William as well. Defendant then pulled out a gun and shot William in the chest. After shooting William, defendant fled the area.
Officer C.D. Joyner, of the Rocky Mount Police Department, arrived at 104 Townhouse Court at approximately 12:45 a.m. and was the first officer on the scene. At some point after his arrival, Joyner spoke with Tamara about the events of the night. Tamara was also interviewed by Detective Mike Lewis on the day following the shooting, during which she gave a written statement of the events of the previous night.
Defendant claimed that he shot William in self-defense. Defendant testified that on the day that William died, defendant had been drinking and smoking a combination of tobacco and cocaineall day. Defendant remembered William joining him and Stephanie in the yard, but claimed that William started the argument. Defendant testified that William, who was a larger man than defendant, started to advance toward him and backed defendant into a wall. Defendant then attempted to push William away. Defendant claimed that William began advancing toward him again and defendant saw him reach with his right hand for what defendant thought was a weapon. At that point, defendant shot William.
Defendant was convicted by a jury of second-degree murder. Defendant appeals and argues: (1) that the trial court committed plain error in admitting parts of Tamara's prior statement to Officer Joyner as it was inadmissible hearsay; (2) that the trial court committed plain error in admitting parts of Tamara's written statement as it was inadmissible hearsay; and (3) that the trial court erred when it ordered restitution where the trial court failed to consider defendant's ability to pay such restitution and the State failed to present evidence to support the amount of the award.
The plain error standard is limited in its application to only two categories of trial error: errors involving evidentiary rulings and errors involving jury instructions. State v. Black, 308 N.C. 736, 739-41, 303 S.E.2d 804, 806-07 (1983) (standard applicable to evidentiary rulings by the trial court); State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (standard applicable to jury instructions). The Supreme Court, in speaking of when it is appropriate to find plain error, stated: [The standard] is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."
Black, 308 N.C. at 740-41, 303 S.E.2d at 806-07,(quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir. 1982), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. Odom, 307 N.C. at 661, 300 S.E.2d at 378-79. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Black, 308 N.C. at 741, 303 S.E.2d at 807.
Defendant contends that it was plain error for the trial court to admit two prior statements made by Tamara. Shortly after police arrived on the scene, Tamara gave a statement to Officer Joyner. Tamara also provided police with a written statement of the night's events the following day. Joyner testified that Tamara told him that "Stephanie Jones, and Barry Tyrone Pitts, the suspect, had been arguing and that Pitts had pulled a gun on her." Tamara readher written statement into the record, in which she stated: "Stephanie stated that Barry Pitts had been giving her a bad time and had showed her a gun." Defendant argues that Tamara did not testify that Stephanie told her defendant showed her a gun and thus, that these two statements go beyond corroborating Tamara's trial testimony and should not have been admitted. Further, defendant argues that the statements were prejudicial because defendant was claiming self-defense and the statements portray defendant as aggressive. We disagree.
Out of court statements which are offered for the truth of the matter asserted therein are allowed into evidence for the purpose of corroborating the witness's trial testimony. State v. Ramey, 318 N.C. 457, 349 S.E.2d 566 (1986). Our courts allow variation, or new information, in prior consistent statements, so long as the narration of events is substantially similar to the witness's in-court testimony and trial courts have wide latitude in deciding when a prior consistent statement can be admitted for corroborative nonhearsay purposes. State v. Lloyd, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001). It is true, as defendant contends, that Tamara did not specifically say that defendant showed Stephanie his gun during her first narration of the events during her testimony. However, even assuming arguendo that Tamara's prior statements were improperly admitted, we do not conclude that defendant has shown plain error.
Defendant's argument for prejudice is predicated upon the fact that he presented the defense of self-defense at trial. Self-defense excuses a killing completely if the following four necessary elements of perfect self-defense exist at the time of the killing:
(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.
State v. Richardson, 341 N.C. 585, 588, 461 S.E.2d 724, 726 (1995) (quoting State v. McAvoy, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992)). However, "[u]nder the law of imperfect self-defense, if the first two elements existed at the time of the killing, but defendant, although without murderous intent, was the aggressor in bringing on the affray or used excessive force, defendant is guilty at least of voluntary manslaughter." Richardson, 341 N.C. at 588, 461 S.E.2d at 726-27 (quoting McAvoy, 331 N.C. at 596, 417 S.E.2d at 497.
Any impact of Tamara's statements that defendant either pulled or showed a gun to Stephanie was negligible in light of all the evidence. Several people testified that defendant had been yellingand cursing at Stephanie for most of the evening and that William sought to intervene on her behalf. Defendant admitted that on the day in question he had been drinking alcohol and using drugs, that he had a gun with him, that he had it with him all day, that he never saw William with a weapon, that he and William were arguing and that he shot William. Defendant's only claim of prejudice is based on the supposition of what the jury might have thought about him as an aggressor upon hearing that defendant showed Stephanie a gun. When considered with all the other evidence presented at trial, we cannot conclude that the admittance of Tamara's prior statements concerning whether defendant showed Stephanie a gun caused the jury to convict defendant. Defendant's assignments of error fail.
Defendant also argues that the trial court erred in not considering defendant's ability to pay the amount ordered as restitution and in ordering a set amount of restitution based only upon the restitution worksheet submitted by the State. In the judgment, the trial court ordered that defendant pay, as condition of post release supervision, restitution in the amount of $7,500.
These issues were addressed in State v. Wilson, 340 N.C. 720, 459 S.E.2d 192 (1995). In deciding whether the trial court must consider a defendant's ability to pay restitution, the Court found that any "trial court's order of restitution as a condition of work release or parole constitutes a recommendation to the Secretary of the Department of Correction and the Parole Commission, not an order binding defendant to pay restitution in this amount upon theentry of judgment in this action." Wilson, 340 N.C. at 725-26, 459 S.E.2d at 195 (emphasis in original). The Court then went on to conclude:
"There is no statutory requirement for a sentencing judge to inquire into a defendant's ability to pay restitution when the judge merely recommends restitution as a condition of parole or work release." We conclude, therefore, that the trial court did not err in failing to consider defendant's ability to pay restitution, as the potentially binding determination at a later date requiring defendant to pay restitution as a condition of work release or parole by either the Department of Correction or the Parole Commission will by necessity require sufficient evidence of defendant's ability to pay at that time.
Id. at 726, 459 S.E.2d at 195-96 (internal citation omitted). Thus, it was not error for the trial court to not consider defendant's ability to pay restitution. Defendant's argument fails.
However, the Wilson court went on to conclude that "[r]egardless of whether restitution is ordered or recommended by the trial court, the amount must be supported by the evidence." Id. at 726, 459 S.E.2d at 196 (quoting State v. Daye, 78 N.C. App. 753, 757, 338 S.E.2d 557, 560 (1986)). In Wilson, the only evidence supporting the amount of restitution was the prosecutor's unsworn statement. Wilson, 340 N.C. at 727, 459 S.E.2d at 196. The court concluded that the prosecutor's unsworn statement was insufficient to support the amount of restitution recommended and vacated that portion of the judgment. Id. In the instant case, the only evidence to support the amount of restitution recommendedthat we find in the record is the prosecutor's unsworn statement to the trial court and the unverified restitution worksheet, which is not itself in the record but is mentioned in the transcript. This evidence is not sufficient to support the amount of restitution recommended. Thus, because the $7,500 amount of recommended restitution is not supported by the evidence adduced at trial or sentencing, we vacate that portion of the judgment recommending restitution in the amount of $7,500.
No error in part; vacated in part.
Judges GEER and LEVINSON concur.
Report per Rule 30(e).