IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-479

Filed:  3 March 2020

Mecklenburg County, No. 16 CRS 231178

STATE OF NORTH CAROLINA

        v.

JAMES EDWARD LEAKS

        Appeal by Defendant from Judgment entered 8 August 2018 by Judge Carla

Archie in Mecklenburg County Superior Court.  Heard in the Court of Appeals 4

December 2019.

> *Attorney General Joshua H. Stein, by Assistant Attorney General John H.*
> *Schaeffer, for the State.*
>
> *William D. Spence for defendant-appellant.*

        HAMPSON, Judge.

### Factual and Procedural Background

        James Edward Leaks (Defendant) appeals from Judgment entered 8 August

2018 upon his conviction for Second-Degree Murder.  The Record before us, including

evidence presented at trial, tends to show the following:

        On the afternoon of 16 August 2016, around 4:00 p.m., Sylvia Moore (Ms.

Moore), her brother Eric Moore (Mr. Moore), and Darrell Cureton (Decedent) were

outside Ms. Moore's apartment doing yardwork.  Ms. Moore and Decedent had been

dating for approximately two years. Some time prior to her relationship with Decedent, Ms. Moore had dated Defendant for approximately five years. Ms. Moore testified her relationship with Decedent was "pretty good" after they broke up and that there had been no confrontations between Defendant and Decedent prior to 16 August 2016.

Decedent began cutting the grass while Ms. Moore watered her plants. After Decedent finished mowing the lawn, Ms. Moore heard a voice ask Mr. Moore for a cigarette. Ms. Moore looked up and saw Defendant and a man, later identified as Calvin Mackin (Mackin), standing by her yard. Conflicting testimony was presented at trial as to what transpired following that interaction; however, an altercation erupted between Defendant and Decedent, resulting in Defendant stabbing Decedent in the chest. Although Emergency Management Services was called to the scene, Decedent died from his injuries. Later that same day, the Charlotte-Mecklenburg Police Department arrested Defendant for first-degree murder. At Defendant's trial, the Medical Examiner testified Decedent's cause of death was a stab wound to the chest, stating it appeared the "knife was coming out at least partially and going back in three separate times."

Defendant's trial came on for hearing on 30 July 2018. During pretrial motions, Defendant submitted a Motion for Jury View (Motion for Jury View), requesting a jury view of the crime scene, which the trial court, in its discretion,

denied. The State began its case by calling Ms. Moore. Ms. Moore testified after she heard the men asking Mr. Moore for a cigarette, she heard a crashing in some bushes behind her and saw Defendant on her porch. She observed Defendant exit her porch, "bump" into Decedent, and run off. Ms. Moore further testified after the encounter she saw Defendant holding a knife. She turned to Decedent to find him holding his chest. Ms. Moore testified she saw a little bit of blood, and she told Mr. Moore to call 911. On cross-examination, Ms. Moore admitted she was not paying much attention to the events until she noticed Defendant on her porch.

Mr. Moore also testified at trial to his recollection of the 16 August 2016 events. Mr. Moore testified that he was at Ms. Moore's residence to help with yardwork. As Mr. Moore was sitting on Ms. Moore's steps, Defendant and Mackin stopped and asked him for a cigarette. Mr. Moore testified that, at that time, Decedent was on the side of the house doing yardwork. Mr. Moore gave Defendant and Mackin each a cigarette. By that point, Decedent had walked over and was standing behind Mr. Moore. Defendant stared at Decedent and "patted his knife." Decedent then walked to his truck and picked up a two by four, telling Defendant to "go on." Mr. Moore testified Decedent held the two by four with a hand on each end across his chest. Mr. Moore witnessed Defendant move toward Decedent, causing Decedent to drop the two by four and attempt to run. Mr. Moore then saw Defendant stab Decedent. Mr. Moore called 911 as Defendant walked away.

The State also called Theresa McCormick-Dunlap (Dunlap) as a witness. Dunlap testified that as she was exiting a house across the street accompanied by her friend Veronica Streeter (Streeter), she saw the two men fighting, one in retreat, Decedent, and one in pursuit, Defendant. Dunlap described Decedent as holding a "long piece of wood" to "shield himself" and described Defendant as "making jabbing motions" but she could not see anything in Defendant's hands. Dunlap testified Defendant "swaggered off" after he "landed a good blow or whatever . . . ." She then saw Decedent stagger toward the stairs to sit down. Dunlap ran over and saw blood on Decedent's shirt. She stayed at the scene until the ambulance arrived. The next day, Dunlap gave a recorded statement to the Charlotte-Mecklenburg Police Department.

Defendant testified at trial in his defense. Defendant testified on the afternoon of 16 August 2016 he was walking to the 7-Eleven with his cousin Mackin. Defendant recounted Mackin asking Mr. Moore for a cigarette while Mr. Moore was sitting on the steps. He described Ms. Moore as being on the front porch and Decedent in front of the home as well. Defendant continued: "[Mackin] was coming back across the street with the cigarette and he said look out," and that was when Decedent "swung at [him] with the two by four." Defendant "started to fear for [his] life" as Decedent was holding the two by four as a baseball bat. Defendant testified after Decedent hit him a couple more times with the two by four, he stabbed Decedent one time in the

chest with his knife. Defendant stated he stabbed Decedent with the intent to "get him off me," and he stated he did not intend to kill Decedent.

At the close of trial, the State and Defense Counsel both submitted proposed jury instructions. In Defendant's proposed instructions, Defense Counsel modified North Carolina Pattern Instruction 206.10, in line with footnote four of the pattern instructions, to read: "First, the defendant believed it was necessary to *use deadly force against* the victim in order to save the defendant from death or great bodily harm." The trial court declined to adopt Defendant's proposed modification and presented the following unmodified instruction to the jury: "The Defendant would be excused of first-degree murder and second-degree murder on the ground of self-defense if, first, the Defendant believed it was necessary to *kill* the victim in order to save the Defendant from death or great bodily harm."

On 8 August 2018, the jury returned a verdict finding Defendant guilty of Second-Degree Murder, a Class B1 felony. The trial court sentenced Defendant in the presumptive range. The trial court calculated Defendant had eleven prior-record-level points, rendering his prior-record level IV. Defendant objected to the trial court's determination of his prior-record level. Defendant gave Notice of Appeal in open court.

## **Issues**

There are three issues before this Court on appeal: (I) whether the trial court abused its discretion in denying Defendant's Motion for Jury View; (II) whether the trial court erred in its jury instructions when it stated the Defendant "believed it was necessary to *kill* the victim" instead of "necessary to *use deadly force against* the victim"; and (III) whether the trial court erred by determining Defendant has a prior-record level of IV.

## Analysis

### I. Defendant's Motion for Jury View

Defendant first contends the trial court abused its discretion when it denied his Motion for Jury View. We disagree.

> [N.C. Gen. Stat.] § 15A-1229(a) provides that the decision to permit a jury view lies within the discretion of the trial court. The decision will not be disturbed absent an abuse of that discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.

*State v. Fleming*, 350 N.C. 109, 134, 512 S.E.2d 720, 737 (1999) (citations and quotation marks omitted); *see* N.C. Gen. Stat. § 15A-1229(a) (2019) ("The trial judge in his discretion may permit a jury view.").

In the present case, the trial court heard arguments on Defendant's Motion for Jury View from the State and Defense Counsel. Defendant argued a jury view was important to give the jury "an accurate view of what [the testifying eyewitnesses] would have been able to see and what kind of obstruction would have been in the line

of sight that they would have, the area where this was occurring, as well as the distance involved[.]" The State and Defendant both indicated their intent to introduce photographs of the crime scene for the jury. The trial court considered "the availability of photographs, diagrams, and other material [ ]" and noted the alleged crime occurred during daylight and, in its discretion, denied Defendant's Motion. Accordingly, the trial court's denial of Defendant's Motion for Jury View was the result of a reasoned decision and was not an abuse of discretion.

## II. Jury Instructions

Defendant next contends the trial court erred in its instructions to the jury pertaining to Defendant's requested instruction on self-defense. Specifically, Defendant argues the trial court erred in instructing the jury that "the defendant believed it was necessary to *kill* the victim in order to save the defendant from death or great bodily harm[,]" and instead should have instructed the jury that Defendant "believed it was necessary to *use deadly force against* the victim." Defendant's argument raises a question of law, which we review de novo. *See State v. Edwards*, 239 N.C. App. 391, 393, 768 S.E.2d 619, 621 (2015) ("We hold that where the request for a specific instruction raises a question of law, the trial court's decisions regarding jury instructions are reviewed de novo by this Court." (citation and quotation marks omitted)).

At the close of evidence, the trial court held a charge conference with counsel for both parties. Both parties submitted proposed instructions; Defense Counsel requested the trial court instruct the jury, in part: "The defendant would be excused of first degree murder and second degree murder on the ground of self-defense if: First, the defendant believed it was necessary to *use deadly force against* the victim in order to save the defendant from death or great bodily harm." N.C.P.I. –Crim 206.10 (June 2014). This modification was supported by a footnote in the pattern instructions directing the trial court to "[s]ubstitute 'to use deadly force against the victim' for 'to kill the victim' when the evidence tends to show that the defendant intended to use deadly force to disable the victim, but not to kill the victim. *See State v. Watson,* 338 N.C. 168 (1994)." N.C.P.I.–Crim. 206.10 n.4. The trial court, after hearing arguments, held Defendant was entitled to an instruction on self-defense; however, the trial court declined Defendant's requested modification and instructed the jury in accordance with the unmodified pattern instructions.

Defendant argues the trial court's instruction of "to kill" instead of "to use deadly force against" prejudiced Defendant because "an instruction that a defendant must have believed he needed to kill, might be construed by a jury as allowing it to reject defendant's self-defense claim on the ground that defendant did not entertain such a belief[.]" We first recognize "[t]he preferred method of instructing the jury is the use of the approved guidelines of the North Carolina Pattern Jury Instructions."

*State v. Solomon*, 117 N.C. App. 701, 706, 453 S.E.2d 201, 205 (1995). Here, the trial court's instruction to the jury, other than the modification at issue, was identical to the North Carolina Pattern Jury Instruction in N.C.P.I.–Crim. 206.10 submitted by Defendant.

In *State v. Richardson*, our Supreme Court addressed the specific language at issue in the present case. 341 N.C. 585, 587, 461 S.E.2d 724, 726 (1995). The *Richardson* Court, engaging in a thorough analysis of North Carolina's self-defense instructions, held:

> The language in *Watson* indicating that in certain situations, the self-defense instruction should read that it was necessary 'to shoot or use deadly force' was *dicta*, and that language is now expressly disavowed. We conclude that it is not necessary to change the self-defense instruction to read necessary 'to shoot or use deadly force' in order to properly instruct a jury on the elements of self-defense.[1]

*Id.* at 592, 461 S.E.2d at 729. The *Richardson* Court emphasized "the [to kill] language in the self-defense instruction does not read into the defense an 'intent to kill' that is not an element of second-degree murder." *Id.* at 594, 461 S.E.2d at 730.

Defendant acknowledges our Supreme Court's decision in *Richardson* discussing the relevant language in *Watson* as *dicta*; however, Defendant argues the

---

[1] The North Carolina Supreme Court revisited this same issue eight years later in *State v. Carter* and expressly reaffirmed its holding in *Richardson*. *State v. Carter*, 357 N.C. 345, 361, 584 S.E.2d 792, 803-04 (2003) ("In *Richardson*, we approved a jury instruction that was, in all relevant respects, identical to the instruction at issue in the present case. Since *Richardson*, we have declined opportunities to reconsider the issue. After carefully examining defendant's argument, we find no reason to depart from our prior holdings." (citations omitted)).

2011 enactment of N.C. Gen. Stat. §§ 14-51.2, 14-51.3, creating statutory rights to self-defense, supersedes *Richardson*. In particular, N.C. Gen. Stat. § 14-51.3, titled "Use of force in defense of person; relief from criminal or civil liability," provides

> (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
>
> > (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
> >
> > (2) Under the circumstances permitted pursuant to G.S. 14-51.2.

N.C. Gen. Stat. §14-51.3 (a) (2019).

Specifically, Defendant argues Section 14-51.3 does not require a person believe it necessary to *kill* his or her assailant in order to save himself or herself from death or bodily harm. Section 14-51.3 authorizes the use of deadly force if a person is "in any place he or she has the lawful right to be" and "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself . . . ." *Id.* Defendant contends the trial court's instruction allowing the jury to excuse Defendant of first-degree or second-degree murder "if, first, the Defendant believed it was necessary to *kill* the victim in order to save the Defendant from death or great bodily harm" imputes an "intent to kill" requirement that was not retained in N.C.

- 10 -

Gen. Stat. § 14-51.3. We acknowledge the extent to which our general statutes codifying the right to self-defense, including Section 14-51.3, supplements or supersedes *Richardson* and its progeny is unsettled. *See State v. Lee*, 370 N.C. 671, 678, 811 S.E.2d 563, 568 (2018) ("In 2011, however, the General Assembly enacted N.C.G.S. §§ 14-51.3 and 14-51.4, which at least partially abrogated—and may have completely replaced—our State's common law concerning self-defense and defense of another." (Martin, C.J., concurring)). However, until our Supreme Court provides further guidance on this issue, we are bound by its decision in *Richardson*. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) ("[The Court of Appeals] has no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions until otherwise ordered by the Supreme Court." (alterations in original) (quotation marks omitted)).

Accordingly, we conclude the trial court did not err when it instructed the jury according to N.C.P.I Crim–206.10. The North Carolina Pattern Jury Instructions were revised in 2014 and include efforts to harmonize our common law right to self-defense with the 2011 enactment of Sections 14-51.2, 14-51.3, and 14-51.4. *See* N.C.P.I.–Crim 206.10 n.6 ("Pursuant to N.C. Gen. Stat. § 14-51.4(1), self-defense is also not available to a person who used defensive force and who was [attempting to commit] [committing] [escaping after the commission of] a felony. If evidence is presented on this point, then the instruction should be modified accordingly to add

this provision."); N.C.P.I.–Crim 206.10 n.8 ("N.C. Gen. Stat. §14-51.3 (a)"). "[Our Supreme Court] has previously stated that as long as the trial court gives a requested instruction in substance, it is not error for a trial court to refuse to give a requested instruction verbatim, even if the request is based on language from this Court." *State v. Lewis*, 346 N.C. 141, 146, 484 S.E.2d 379, 382 (1997) (citations and quotation marks omitted). Our Supreme Court's decision in *Richardson,* reaffirmed in *Carter,* expressly held that an instruction including the disputed phrase "to kill" was correct. *Richardson,* 341 N.C. at 592, 461 S.E.2d at 729. Thus, the trial court did not err in its instructions to the jury.

### III. Prior-Record-Level Determination

Defendant contends the trial court erred by incorrectly calculating he was a prior-record level IV, arguing instead that Defendant is a prior-record level III. "[I]n evaluating defendant's challenge to his prior record level calculation, the trial court's findings of fact are conclusive on appeal if supported by competent evidence, [and] the trial court's conclusions of law are reviewed *de novo* by this Court." *State v. Mullinax*, 180 N.C. App. 439, 442, 637 S.E.2d 294, 296 (2006). Under N.C. Gen. Stat. § 15A-1340.14(f)(4), the State must prove the existence of a prior conviction by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.14(f)(4) (2019).

The trial court determined Defendant had eleven prior-record-level points, thereby rendering his prior-record level IV. Defendant contends the evidence at trial

supports only nine prior-record-level points, rendering his prior-record level III. Prior to sentencing, Defendant challenged four convictions that were submitted by the State on Defendant's Prior Record Level Worksheet; specifically, a 1992 Felony Breaking and Entering, a 1991 Misdemeanor Breaking and Entering, a 1991 Injury to Real Property, and a 1989 Assault with a Deadly Weapon. The trial court requested and received certified copies from the Clerk of Superior Court of Defendant's criminal records.

Defendant contends the 1989 Misdemeanor Assault with a Deadly Weapon incorrectly added one prior-record-level point to his Prior Record Level Worksheet because the Record does not show "exactly what defendant was convicted of nor the sentence." Our review of the Record reflects that a finding of guilty was entered and Defendant received a Prayer for Judgment Continued (PJC) for twelve months. This Court has held a PJC may be used when calculating a defendant's prior-record level. *See, e.g.*, *State v. Graham*, 149 N.C. App. 215, 220, 562 S.E.2d 286, 289 (2002) ("formal entry of judgment is not required in order to have a conviction" (citations and quotation marks omitted)). Thus, the trial court did not err by finding Defendant's 1989 conviction, which resulted in a PJC, added one prior-record-level point to his Prior Record Level Worksheet.

Defendant next challenges both of his 1991 convictions. The Record reflects the trial court added one point to Defendant's calculation for two convictions:

Misdemeanor Breaking and Entering and Injury to Real Property. Defendant argues these convictions should carry no points because the Record shows no sentence. However, the Record reflects these charges were consolidated and a plea of guilty entered. Thus, the State submitted sufficient evidence for the trial court to find by a preponderance of the evidence that Defendant was convicted of Misdemeanor Breaking and Entering and Injury to Real Property, and the trial court did not err in adding one prior-record-level point to Defendant's Prior Record Level Worksheet.

For the 1992 Breaking and Entering, Defendant argues the conviction was erroneously counted as a felony, resulting in the addition of two prior-record-level points to his Prior Record Level Worksheet instead of one prior-record-level point for a misdemeanor. Defendant contends the Record is insufficient and unclear because the certified copy of his criminal record submitted to the trial court lists the Charge Offense only as "M charge change Felonious B & E." Assuming this evidence was insufficient to establish Defendant's 1992 conviction was indeed a felony instead of a misdemeanor, this would result in the reduction of one prior-record-level point from Defendant's Prior Record Level Worksheet. With ten prior-record-level points, Defendant would remain a prior-record level IV, rendering the purported error harmless. *See State v. Smith*, 139 N.C. App. 209, 220, 533 S.E.2d 518, 524 (2000) (holding that an error in calculating prior-record-level points is harmless if it does

not affect the ultimate prior-record-level determination). Thus, Defendant was correctly sentenced as a prior-record level IV.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude the trial court did not abuse its discretion when it denied Defendant's Motion for Jury View. We further conclude the trial court did not err in its self-defense instructions to the jury, and the trial court did not err when it sentenced Defendant as a prior-record level IV.

NO ERROR.

Judges BRYANT and COLLINS concur.